# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TIME FOR THREE, LLC**, a Pennsylvania limited liability corporation, **FOOSEAOKE LLC dba S'MORE ENTERTAINMENT**, a California Corporation, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>**ENTERTAINMENT ONE GP LLC**, dba E1 ENTERTAINMENT and/or KOCH ENTERTAINMENT, a New York limited partnership; **ENTERTAINMENT ONE U.S. LP**, dba E1 ENTERTAINMENT and/or KOCH ENTERTAINMENT, a New York limited partnership,<br><br>   Defendants. | Case no:_____<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Time for Three, LLC ("Time for Three") and Fooseaoke LLC dba S'more Entertainment ("S'more Entertainment") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege upon personal knowledge as to themselves and upon information and belief as to all other matters, based upon, *inter alia*, the investigation made by and through their attorneys, as follows:

## I. NATURE OF THE ACTION

1. Defendants Entertainment One GP LLC and Entertainment One U.S. LP, doing business as E1 Entertainment and/or Koch Entertainment LP ("Defendants" or "Entertainment One") comprise a music and entertainment label which claims to be the "#1 independent music brand in North America, working with many of today's best artists."[1] Entertainment One's business model is predicated on acquiring the rights to distribute and exploit the musical works and audio recordings of artists (hereinafter "Musical Works"). Entertainment One primarily acquires the rights to distribute Musical Works by: (1) signing artists (e.g. Time for Three) to licensing or recording agreements whereby Entertainment One acquires the rights to exploit the artist's Musical Works (hereinafter "Licensing Agreements"); and (2) entering into distribution agreements with other entertainment labels (e.g. S'more Entertainment") whereby Entertainment One agrees to distribute Musical Works for the label (hereinafter "Distribution Agreements").

2. The Contracts[2] between Entertainment One, and Plaintiffs and other similarly situated Class Members,[3] include provision(s), which grant Digital Entertainment Media Distribution ("DEMD") rights to Entertainment One, via various digital mediums including

---

[1] *See* Entertainment One Website (available at http://us.eonemusic.com/home?lang=en-GB) (last viewed on January 11, 2017).
[2] The terms "Contract" or "Agreement" shall refer to any Licensing Agreement or Distribution Agreement between Entertainment One and the Class Members.
[3] The term "Class Members" refers to persons who fall within the scope of the Class defined in this Complaint.

digital downloads (e.g. iTunes), streaming services (e.g. Spotify), and digital satellite radio (e.g. Sirius XM Radio).

3. The Contracts between Entertainment One and the Class Members require Entertainment One to accurately account for all DEMD revenues generated under the Contracts, and pay a portion of these DEMD revenues to the Class Members in accordance with the terms of the Contracts.

4. In violation of the Class Member Contracts, Defendants entered into secret negotiations and agreements with satellite radio provider Sirius XM Radio ("Sirius XM"), for the exploitation of Plaintiffs' and the Class Members' intellectual property. Defendants have systematically failed to account for any revenue, or pay any portion of the revenue generated from the exploitation of the Class Members' Musical Works on Sirius XM under this agreement.

5. Plaintiffs bring this nationwide class action on behalf of themselves and similarly situated Class Members arising from Defendants' failure to properly account for and pay revenues generated for the distribution of the Class Members' Musical Works on Sirius XM and other digital satellite radio providers. Plaintiffs bring claims including for breach of contract, breach of the implied covenant of good faith and fair dealing, an accounting, and declaratory relief. Plaintiffs seek monetary damages, injunctive, and/or declaratory relief on behalf of themselves and others similarly situated against Defendants' for their willful violation of the Agreements.

## II. VENUE AND JURISDICTION

6. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the relevant provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts of any class action in any which any member of the plaintiff Class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.

7. Plaintiffs allege that the total claims of the individual members of the Class in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). As set forth below, Plaintiff Time for Three, LLC is a Pennsylvania limited liability corporation, and therefore, a citizen of Pennsylvania. Plaintiff S'more Entertainment, Inc. is a California corporation with its principal place of business located in California, and therefore, a citizen of California. Defendants are citizens of and headquartered in the state of New York. Therefore, diversity of citizenship exists under CAFA, and diversity jurisdiction, as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A). Furthermore, Plaintiffs allege on information and belief that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than New York, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

8. Venue in this judicial District is proper pursuant to 28 U.S.C. § 1391(a) because, as set forth below, Defendants conduct business in, and may be found in, this district, and the Agreements between Defendants and Plaintiffs contain venue provisions, which provide that any dispute arising under or concerning the Agreements must be filed in courts within this judicial District.

## III. PARTIES

### Plaintiffs

**Time for Three**

9. Plaintiff Time for Three, LLC is a Pennsylvania limited liability corporation formed in 2005. On or about December 1, 2008, Time for Three executed a Licensing Agreement with Koch Entertainment LP (Defendants' predecessor-in-interest) which set out the royalty compensation that Defendants would collect and pay to Time for Three, in consideration for Time for Three's agreement to license its works to Defendants. Time for Three's Licensing Agreement has an exploitation period of ten (10) years and thus runs through December 1, 2018. A true and correct copy of Time for Three's Licensing Agreement is attached hereto as **Exhibit 1**.

10. Time for Three's Licensing Agreement required Defendants to account for all revenues generated from DEMD, and pay Time for Three a portion of DEMD revenues pursuant to the provisions of the Licensing Agreement. *See* Exh. 1, ¶ 8 (h).

11. Plaintiffs are informed believe and thereon allege that Defendants have systematically failed to account for and pay Time for Three for Musical Works that were played on Sirius XM and other satellite radio providers in violation of the Agreement with Time for Three.

**S'more Entertainment**

12. Plaintiff Fooseaoke LLC dba S'more Entertainment is a California corporation with its principal place of business located in Sherman Oaks, California. S'more Entertainment is an independent entertainment company which owns the rights to an extensive film and music portfolio.

13. On or about November 3, 2010, S'more Entertainment entered into a Distribution

Agreement with Entertainment One U.S., LP, which granted Defendants the rights to distribute Musical Works for S'more Entertainment. On or about January 18, 2011 S'more Entertainment and Entertainment One U.S., LP entered into an amendment to the November 3, 2010 Distribution Agreement, which incorporates DEMD, including Sirius XM and other digital satellite radio, within the scope of the Distribution Agreement. A true and correct copy of S'more Entertainment's November 8, 2010 Distribution Agreement, and the January 18, 2011 amendment thereto are attached hereto as **Exhibit 2**.

14. S'more Entertainment's Distribution Agreement required Defendants to account for all revenues generated from DEMD, and pay S'more Entertainment a portion of those revenues pursuant to the provisions of the Agreement.

15. Plaintiffs are informed believe and thereon allege that Defendants have failed to account for and pay S'more Entertainment for Musical Works that were played on Sirius XM and other satellite radio providers in violation of the Agreement with S'more Entertainment.

**Defendants**

16. Defendant Entertainment One GP LP is, and at all times was, a New York limited partnership whose principal place of business is located in Port Washington, Nassau County, New York.

17. Defendant Entertainment One U.S. LP is, and at all relevant times was, a New York limited partnership whose principal place of business is located in Port Washington, Nassau County, New York.

18. At all relevant times, Defendants were and continue to be in several lines of business in the entertainment field, including the business of exploiting and distributing the music of recording artists – services for which Plaintiffs and the Class Members contracted with Defendants.

19. Plaintiffs are informed and believe and based thereon allege that at all times herein relevant, each of the Defendants were the alter ego, agent, servant, representative and employee of the remaining Defendants, and in doing the things hereinafter alleged, each was acting within the course and scope of said agency and employment and with the ratification and authorization of their respective principals.

## IV. COMMON ALLEGATIONS

### A. Defendants' Agreements With Class Members Require Defendants to Accurately Account For and Pay Revenues From Digital Media Exploitation

20. Defendants purport to comprise the largest independent record label in the United States. Defendants' business model is predicated on acquiring the rights to exploit and distribute copyright-protected Musical Works utilizing Licensing Agreements with artists (e.g. Time for Three) and Distribution Agreements with other record companies (e.g. S'more Entertainment).

21. Under these Agreements, Defendants promise to compensate the Class Members in exchange for the rights to distribute the Musical Works controlled by the Class Members. The Agreements allow Defendants to use their considerable market power to distribute the Class Members' intellectual property through various media, including but not limited to selling hard copy records (e.g. CDs, vinyl), and DEMD such as digital downloads (e.g. iTunes, Amazon), streaming (e.g. Spotify, Pandora), and digital satellite radio (e.g. Sirius XM).

22. In exchange for these distribution rights, each of the Agreements between Defendants and the Class Members, place the following obligations upon Defendants. First, Defendants must account for and report all revenue from the exploitation of the Musical Works generated from DEMD, including Sirius XM, to the Class Members. Second, Defendants must pay Class Members a portion of the revenues from the distribution of Musical Works, including

distribution from DEMD, including Sirius XM, in accordance with the Agreements.

23. Each of the Agreements contains a New York choice of law provision.

**B.** **Defendants' Secretly Withheld Revenues From Sirius XM in Violation of the Contracts Resulting in Substantial Damages to the Class Members**

24. Pursuant to the 1995 Digital Performance Right in Sound Recordings Act, and the 1998 Digital Millennium Copyright Act, artists, songwriters, and masters holders are legally entitled to receive royalties for digital performances of Musical Works on DEMD, including on Sirius XM. In the absence of a direct contractual agreement between the digital transmission entities (e.g. Sirius XM) and a record company, these DEMD royalties are determined based on federally-approved statutory license rates. By law DEMD royalties generated pursuant to a statutory license—absent an agreement between the parties—are collected on behalf of and distributed to rights holders by the independent non-profit organization, SoundExchange, Inc. ("SoundExchange").

25. When digital transmission providers contract directly with record companies for DEMD rights, such royalties are paid at contractually negotiated rates, and the obligation to collect, account for and pay such revenues to artists and musicians falls on the record company, instead of SoundExchange.

26. In this case, Defendants secretly negotiated and entered into an agreement for Sirius XM to distribute the Musical Works of Plaintiffs and the Class Members. Defendants had a legal obligation under the Agreements with Plaintiffs and other Class Members to properly and accurately account for and pay the revenue received by Defendants to Plaintiffs and Class Members. On information and belief, rather than fulfilling their contractual obligations, Defendants have systematically, knowingly, and intentionally withheld and failed to account for and pay for revenue generated from Sirius XM Plaintiffs and other Class Members.

27. As a result of Defendants' conduct, the revenue that Defendants have collected from Sirius XM is never reported, and is never subject to potential remittance to Plaintiffs and the Class Members. Instead, these revenues have been wrongfully retained by Defendants outright.

28. Defendants have engaged in this conduct even though they have no contractual or legal right to do so. It is currently unknown whether there are entities other than Sirius XM from whom Defendants are collecting DEMD revenue, without reporting and paying such revenues to Plaintiffs and the Class Members.

29. Defendants are wrongfully retaining monies that are owed to Plaintiffs and the Class Members. On information and belief, Defendants could easily account for and pay the money owed to Plaintiffs and the Class Members, as required by the Agreements.

30. As a result of Defendants' systematic and continuous breach of their contractual obligations to Plaintiffs and other Class Members to properly credit and pay the revenue generated from the distribution of Plaintiffs and Class Members' works, Defendants have caused substantial damages to Plaintiffs and the Class Members. Defendants' practices, as alleged herein, have resulted in the wrongful withholding of a substantial amount of money owed to Plaintiffs and the Class.

**C.     Defendants Are Equitably Estopped from Asserting a Statute of Limitations Defense**

31. Defendants' conduct, as alleged herein, prevented Plaintiffs and the Class Members from filing suit until the present. On information and belief, Defendants and Sirius XM entered into a secret agreement whereby Defendants permitted Sirius XM to exploit the class members' Musical Works without the Class Members' knowledge. Due to the secret nature of this agreement and conduct by Defendants, Class Members did not and could not know that they had a potential claim against Defendants for this conduct. Defendants intentionally

9

kept the agreement with and revenues generated from Sirius XM, and potentially other distributors, a secret to avoid paying revenues generated under these agreements to Plaintiffs and the Class Members.

32. At all relevant times, Defendants knew that they were improperly collecting revenues that they were not entitled to, and thereafter, failing to account to and pay Plaintiffs and Class Members what they were owed. Defendants have not reported to Plaintiffs and the Class Members that they have been collecting performance royalties directly from Sirius XM, and thus purposely concealed and withheld the existence of these revenues from Plaintiffs in violation of Defendants' contractual obligations. Plaintiffs and Class Members reasonably relied on Defendants' accounting statements and reports to their detriment. Plaintiffs and Class Members did not know, and could not have reasonably known, that Defendants had entered into a secret agreement to collect revenues from Sirius XM, without reporting such revenues to Plaintiffs and the Class Members.

## V. CLASS ALLEGATIONS

33. Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on their own behalf and on behalf of the following Class:

> All persons and entities, their agents, successors in interest, assigns, heirs, executors, trustees, and administrators who are or were parties to Licensing Agreements or Distribution Agreements with Entertainment One LP and/or Entertainment One US LP that included Digital Entertainment Media Distribution rights, and whose Musical Works were played on Sirius XM.

34. The following persons and entities shall be excluded from the Class: (a) Defendants Entertainment One LP and Entertainment One US LP and their subsidiaries, affiliates, officers, and employees; (b) all persons who make a timely election to be excluded from the proposed Class; (c) governmental entities; and (d) the judge(s) to whom this case is

assigned and any immediate family members thereof.

35. Plaintiffs reserve the right to redefine the Class prior to certification.

36. This action is properly maintainable as a class action.

37. The Class for whose benefit this action is brought is so numerous that joinder of all Class Members is impracticable. While Plaintiffs do not presently know the exact number of Class Members, Plaintiffs are informed and believe that there are hundreds of Class Members, and that those Class Members can only be determined and identified through Defendants' records and, if necessary, other appropriate discovery.

38. There are questions of law and fact which are common to Class Members and which predominate over any questions affecting only individual members of the Class. A class action will generate common answers to the below questions, which are apt to drive the resolution of the litigation:

    a. Whether Defendants breached the agreements by, *inter alia*, withholding and failing to account for and pay revenues generated from DEMD to Plaintiffs and the Class Members;

    b. Whether Defendants benefited financially from their wrongful acts;

    c. Whether Defendants will continue to withhold income derived from DEMD revenues while knowing that such conduct constitutes, at minimum, a breach of the Agreements, if not outright fraud and a violation of applicable federal law;

    d. Whether Defendants, by way of the conduct alleged herein, must provide a proper accounting of the amounts owed to Plaintiffs and other Class Members;

    e. Whether declaratory and injunctive relief are appropriate to curtail Defendants' conduct as alleged herein;

    f. Whether Plaintiffs and other Class Members have been damaged by Defendants' actions or conduct; and

    g. The proper measure of damages.

39. Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature. Plaintiffs' claims are typical of the claims of other Class Members and Plaintiffs have the same interests as other Class Members. Plaintiffs have no interests that are antagonistic to, or in conflict with, the interests of the other members of the Class. Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

40. The prosecution of separate actions by individual Class Members could create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the members of the Class not parties to the adjudications.

41. Furthermore, as the damages suffered by some of the individual Class Members may be relatively small, the expense and burden of individual litigation make it impracticable for the individual members of the Class to redress the wrongs done to them individually. If a class action is not permitted, Class Members will continue to suffer losses and Defendants' misconduct will continue without proper remedy.

42. Defendants have acted and refused to act on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

43. Plaintiffs anticipate no unusual difficulties in the management of this litigation as a class action.

44. For the above reasons, a class action is superior to other available methods for the fair and efficient adjudication of this action.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM
**(Breach of Contract)**
**(On Behalf of Plaintiffs and All Class Members)**

45. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

46. Plaintiffs and Class Members entered into Agreements with Defendants or one of their predecessors-in-interest.

47. According to the Agreements, all monies earned by Defendants from the sale of and distribution of their records, albums, and Musical Works including revenues from DEMD shall be accounted for and paid to Plaintiffs and Class Members in specified amounts required by the contracts. Plaintiffs and other Class Members have performed their obligations under their respective Agreements by providing services called for under the Agreements and granting Defendants the requisite rights to distribute and exploit their Musical Works. As a result, all conditions required for Defendants' performance under the Agreements—namely, the accounting and payment of money to Plaintiffs and Class Members sought herein—have occurred.

48. Defendants have materially breached the Contracts between themselves and the Plaintiffs and Class Members by *inter alia*: (a) failing to properly account for the revenue Defendants receive for distribution of the Class Members Musical Works via Sirius XM and other DEMD; and (b) failing to pay Class Members their portion of revenues that Defendants receive for distribution of the Class Members' Musical Works via Sirius XM and other DEMD.

49. Defendants have failed to cure these breaches and continue to withhold revenues from Plaintiffs and Class Members, in violation of the terms of the Contracts.

50. By reason of the foregoing breaches, Plaintiffs and other Class Members have been damaged in an amount to be determined at trial.

## SECOND CLAIM
### (Breach of Covenant of Good Faith and Fair Dealing)
### (On Behalf of Plaintiffs and All Class Members)

51. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

52. Plaintiffs and Class Members entered into licensing and distribution Contracts with Defendants or one of their predecessors-in-interest.

53. Plaintiffs and Class Members performed all, or substantially all, of their obligations and conditions under the Agreements. As a result, all conditions required for Defendants' performance have occurred.

54. Implied in the Agreements was a promise of good faith and fair dealing by which Plaintiffs and the Class Members, on the one hand, and Defendants, on the other hand, agreed not to do anything to unfairly interfere with the right of the other party to receive the benefits of the contracts.

55. Defendants have unfairly interfered with Plaintiffs' and Class Members' right to receive the benefits of the agreements by, *inter alia*, knowingly concealing and failing to account for the revenue Defendants receive for distributions of the Class Members' Musical Works via Sirius XM and other DEMD. Defendants engaged in this conduct in order to prevent Class Members from discovering and receiving their portion of such revenues and discovering the existence of such revenues.

56. By reason of the foregoing conduct, Plaintiffs and other Class Members have been damaged in an amount to be determined at trial.

## THIRD CLAIM
### (Money Had and Received)
### (On Behalf of Plaintiffs and All Class Members)

57. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

58. Defendant received money from the revenue derived from performance royalties through their secret agreement with Sirius XM. This money was, at least in substantial part, intended for the benefit and use of Plaintiffs and Class Members. The money was not properly used for the benefit and use of Plaintiffs and Class Members, however, and was instead wrongfully kept by Defendants.

59. Defendants are indebted to Plaintiffs and Class Members for their rightful share of the money had and received by Defendants during the class period for the benefit and use of Plaintiffs and Class Members.

## FOURTH CLAIM
### (Declaratory Judgment)
### (On Behalf of Plaintiffs and All Class Members)

60. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

61. Plaintiffs seeks adjudication of an actual controversy in connection with Defendants' breaches of contract and their wrongful retention of Plaintiffs' and the Class Members' funds. Pursuant to the Agreements, Defendants have a continuing obligation to: (1) account for and report all revenue from the exploitation of the works generated from DEMD, including Sirius XM, to Plaintiffs and the Class Members; and (2) pay Plaintiffs and the Class Members a portion of the revenues from the distribution of the Musical Works, including distribution from DEMD, including Sirius XM, in accordance with the Agreements.

62. Plaintiffs and other Class Members have no adequate remedy at law.

63. Plaintiffs' claim presents a justiciable controversy because Plaintiffs and the Class Members will continue to be deprived of their funds as a result of Defendants' wrongful exercise of control and retention of such funds. Plaintiffs seek the Court's determination as to whether Defendants are entitled to collect Plaintiffs' and the Class Members' funds, and even if they are, whether Defendants are entitled to retain 100% of such monies without providing an accounting to the Class Members, and paying Class Members any percentage of such monies.

64. By reason of the foregoing, there is a present and ongoing controversy between Plaintiffs and other Class Members, on the one hand, and Defendants, on the other hand, with respect to which this Court should enter a declaratory judgment determining that Defendants are not permitted to collect the revenues owed to Plaintiffs and the Class Members, and are not permitted to retain such revenues.

65. If declaratory relief is not granted, Defendants will continue to wrongfully assert exclusive right to Plaintiffs' and the Class Members' revenues.

### **FIFTH CLAIM**
**(Accounting)**
**(On Behalf of Plaintiffs and All Class Members)**

66. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

67. Plaintiffs seek a formal accounting of the accounts for Plaintiffs and each and every Class Member, including but not limited to an accounting of all revenue and/or royalties collected by Defendants for any Musical Works associated with Plaintiffs and the Class Members, regardless of whether or not such revenue and/or royalties were distributed by Defendants to Plaintiffs and the Class Members. Plaintiffs are informed and believe that such an accounting will reveal that Defendants have been secretly collecting and retaining performance royalties and/or other revenues due to Plaintiffs and the Class Members from Sirius XM and

16

other DEMD, in violation of the Agreements and Defendants legal and contractual obligations.

## SIXTH CLAIM
### (Unjust Enrichment)
### (On Behalf of Plaintiffs and All Class Members)

68. Plaintiffs repeat and reallege each and every allegation contained in the paragraphs above as though fully set forth herein.

69. In consideration for Plaintiffs' and the Class Members' agreement to license their property to Defendants pursuant to the Contracts, Defendants were required to pay a portion of the revenues generated from the distribution of Musical Works via DEMD to Plaintiffs and Class Members.

70. Defendants have wrongfully refused to abide by the terms of the Contracts because they have unilaterally decided to keep a portion of DEMD revenue to which they are not entitled, and failed distribute any revenue to Plaintiffs and the Class Members. It would be unjust and inequitable to allow Defendants to benefit in this manner without remuneration to Plaintiffs and the Class Members.

71. By reason of the foregoing, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class Members and should be required to disgorge all monies they are not entitled to receive.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and the Class Members, pray for judgment against Defendants, and each of them, as follows:

1. An order certifying the proposed Class, designating Plaintiffs as the named representative of the Class, and designating the undersigned as Class Counsel;

2. A declaration that Defendants have no authority, contractual, statutory, or otherwise, to collect and retain revenues and money belonging to Plaintiffs and the Class Members, or such other relief as the Court may grant;

3. Appropriate injunctive relief, including but not limited to an order permanently enjoining Defendants from retaining any percentage of such royalties unless Plaintiffs and the Class Members agree thereto; and requiring Defendants to account for all revenues to Plaintiffs and the Class Members in accordance with their contractual Agreements;

4. Imposing a constructive trust on the money Defendants unlawfully collected from Sirius XM or any other digital music user for revenues owed to Plaintiffs and the Class Members;

5. Ordering Defendants to return to Plaintiffs and the Class Members the legally entitled portion of revenues it has collected on their behalf, either directly or indirectly, that relate to DEMD;

6. Awarding Plaintiffs and Class Members restitution for Defendants' prior acts;

7. Awarding Plaintiffs and Class Members damages for Defendants' prior acts;

8. Awarding Plaintiffs and the Class Members reasonable attorneys' fees and costs;

9. Awarding pre-judgment and post-judgment interest, as provided by law; and

10. For such other, further, and different relief as the Court deems proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury to the extent that the allegations contained herein are triable by jury under Fed. R. Civ. P. 38 and 39.

DATED: January 17, 2017

**REESE LLP**

By   */s/ Michael R. Reese*
Michael R. Reese
George V. Granade
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: *mreese@reesellp.com*
          *ggranade@reesellp.com*

**JOHNSON & JOHNSON LLP**
Neville L. Johnson (Pro Hac Vice to be Filed)
Douglas L. Johnson (Pro Hac Vice to be Filed)
Jordanna G. Thigpen (SDNY Bar. Adm. Pending)
439 N. Canon Dr. Suite 200
Beverly Hills, California 90210
T: (310) 975-1080
F: (310) 975-1095
Email:  *njohnson@jjllplaw.com*
          *djohnson@jjllplaw.com*
          *jthigpen@jjllplaw.com*

**PEARSON, SIMON & WARSHAW, LLP**
Clifford H. Pearson (Pro Hac Vice to be Filed)
Daniel L. Warshaw (Pro Hac Vice to be Filed)
Bobby Pouya (Pro Hac Vice to be Filed)
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
Email:  *cpearson@pswlaw.com*
          *dwarshaw@pswlaw.com*
          *bpouya@pswlaw.com*

*Counsel for Plaintiffs and the Proposed Class*