

# DISTRIBUTION AGREEMENT

By and Between

S'more Entertainment, Inc.
4335 Van Nuys Blvd
Suite 313
Sherman Oaks, CA 91403

(herein referred to as "Company")

and

Entertainment One U.S. LP
22 Harbor Park Drive
Port Washington, NY 11050-4617

(herein referred to as " eOne ")

As of November 3, 2010



**DISTRIBUTION GRANT.** Subject to the terms and conditions contained herein, the principal officers and directors of Company ("Principal(s)") and Company irrevocably grant to eOne, for the Term and in the Territory, the exclusive right under copyright and otherwise, in any and all media, whether now known or hereafter developed, to be the sole and exclusive distributor of Records owned, controlled by, produced by, distributed by, or otherwise affiliated with, Company, Principals or Affiliates (as used herein, "Affiliates" mean persons or entities owning, controlling, owned by, controlled by or under common control with Company or Principal(s) or any of them and those record labels or other entities whose products are distributed by Company) currently or during the Term, directly or indirectly (which Company warrants and represents includes without limitation all the Products (as defined below and listed on Exhibit A annexed hereto), through all wholesale and retail channels. The reference to Principal(s) in this paragraph is not intended to assign or impute any responsibility or liability to such Principal(s) in the event that there are any defects in the rights that have been granted to eOne hereunder by Company, the sole responsibility for which shall lie with Company. The responsibility of the Principal(s) is and shall be limited to ensuring that the Record distribution rights controlled by Principal(s) and/or Company and/or Affiliates for the Territory are irrevocably and exclusively granted to eOne during the Term subject to the terms of this Agreement and any attempt by Principal(s) to circumscribe the exclusive nature of this Agreement by licensing or consigning the rights to any Products in the Territory during the Term to a third party shall be deemed a material breach of this Agreement.

"Audio Products" or "Products" are all of Company's Compact-Discs, or any other mass-marketable device containing pre-recorded music by which sound may be disseminated now or in the future, excluding sales via Digital Entertainment Media Distribution ("DEMD").

The foregoing shall not be deemed to restrict Company's rights to license one (1) or more individual master recordings contained on Records to third parties for ancillary uses such as films, video games, advertisements and compilations. Such right to license one (1) or more individual master recordings shall be Company's alone.

Notwithstanding anything to the contrary contained herein, eOne shall have the right, in its reasonable judgment, to decline to distribute (or, if distribution has commenced, cease to distribute) Products on the grounds of advocacy of illegal activity, fair comment on matters of public interest, obscenity, patent offensiveness, rights of privacy or publicity and/or defamation or other violation of law or infringement on the rights of any person or entity including without limitation rights of copyright and trademark, or if such release constitutes a breach of any warranty representation or covenant contained herein in which case the Company shall have the right to distribute such Products to a third party, notwithstanding the exclusivity previsions of this Agreement.

Except as expressly provided in this Agreement, nothing herein shall be construed to prevent or restrict eOne from distributing, selling, promoting or otherwise exploiting recordings of any kind, including those owned or controlled by eOne or any other person or entity, whether or not competitive with any Products distributed hereunder.

Company and Company's artists shall have the non-exclusive right to sell Records directly to consumers via their respective web-sites (which may be administrated and/or fulfilled by a third party), mail order fulfillment of orders placed over the Internet to Company's (or Company's artist's) own website (s), over the telephone, in response to television or print advertisements, or through similar direct sales programs, any of which may be administrated and/or fulfilled by a third party.

In addition, from time to time Company may submit Music Video Product to be handled by special arrangement with eOne to be sold to audio accounts. eOne agrees to distribute this Product as they do other comparable Music Video Product. All such Product will be subject to the same terms and conditions as set forth for Audio Products, unless otherwise agreed in writing by the parties.

2

**TERM.** The term of this Agreement (the "Term") will commence on the date hereof and, unless otherwise extended or terminated pursuant to this Agreement, will continue for a period of two (2) years from the later of: (i) execution of this Agreement or (ii) the initial release date of the first of Company's Product(s) by eOne. The later of the dates upon which the Term would expire (absent an extension hereunder) is sometimes referred to as the "End Date."


If eOne has not fully recovered all amounts owed to it by Company (the "Unrecovered Balance") as of the End Date, the Term shall automatically be extended (sometimes referred to as the "Recovery Extension") until such time that eOne has fully recovered the Unrecovered Balance, unless eOne agrees otherwise in writing to terminate such extension. Notwithstanding the foregoing, the Recovery Extension will cease to apply, if, within sixty (60) days after following the End Date: (i) Company pays to eOne one hundred percent (100%) of the Unrecovered Balance; and (ii) Company's new Qualified National Distributor of Products agrees in writing to accept all returns of the Products delivered by Company hereunder.

3

**TERRITORY**.  Company appoints eOne as its exclusive national distributor for all of Company Products for the territory of the United States of America, including its possessions and its territories, commonwealths, possessions and trusteeships and its military Armed Forces Exchanges and embassies throughout the World and military bases ("Territory"). Company appoints Entertainment One Limited Partnership D/B/A eOne Entertainment (Canada) for exclusive national distribution in Canada as per this Agreement and Schedule B of this Agreement.

If Company sells or distributes (or authorizes for sale or distribution) Products outside the Territory, Company will use its best efforts to halt any importation of same into the Territory and Company will cooperate with eOne in that regard and grants to eOne the right, on Company's behalf and in Company's name, to exercise all rights under copyright or other laws to prevent such importation and/or sale in the Territory.

4

**CONSIGNMENT**.  Company will provide all its Products to eOne on a consignment basis and remain the sole owner of its inventory until sold.  Company loses title to its Products upon sale by eOne and eOne is the sole owner of the proceeds of Company's consigned goods (receivables, subject to the payment obligations set forth herein).  Company will ship Compact-Discs in a mutually agreed format in the industry standard packaging format (CDs in 30 count boxes, spine facing up) with box lot barcode labels indicating quantity and title, freight costs covered by Company, and eOne will warehouse Company's inventory at its premises in Port Washington, Long Island, New York, free of charge. To the extent legally required, Company shall use commercially reasonably efforts to assure that the outside packaging of each of the Products will indicate the source of manufacture. Without limiting the foregoing (or any of Company's other obligations hereunder), Company will take any and all other actions which may be reasonably required to comply with any applicable statutes and regulations relating to so called "consumer protection" of the Products. Company solely owns the inventory at eOne and during the Term will maintain adequate insurance coverage for its inventory at all times. eOne is responsible for the accuracy and completeness of Company's inventory, beyond the allowed maximum shrinkage of three (3%) percent, at Company's last actual manufacturing cost.

Within sixty (60) days following eOne's written request, Company shall remove from eOne's distribution center(s), or order the destruction of, all Surplus Inventory (as defined below). eOne will deduct from Company's account all expenses in connection with any removal (including the Drop Shipping Fee as set forth in Exhibit B) or destruction (the Scrap Fee as set forth in Exhibit B) of Surplus Inventory. Company shall be deemed to have ordered the destruction of Surplus Inventory if it has not removed such Surplus Inventory or given instructions for delivery thereof to a non-eOne facility within sixty (60) days following eOne's written request as provided above. "Surplus Inventory" is defined as any inventory for a particular SKU in excess of a twelve (12) month supply calculated on a rolling gross sales basis.  If Company requests continued storage by eOne of such Surplus Inventory and eOne agrees (without obligation) to such, eOne will charge the Storage Fee as set forth in Exhibit B. Any inventory removed from eOne's distribution center(s) under this section shall continue to be subject to this Agreement, and Company shall not sell or permit the sale by any third party of such inventory to eOne's account base in the territory and markets specified in this Agreement. Company authorizes eOne to mark all deleted Product at Company's expense so as to prevent their return to eOne.

Company shall have the nonexclusive right to sell its product to any particular physical account to which eOne elects not to sell or retailer who elects not to purchase from eOne.  Company shall notify eOne of their intent to sell a non eOne account prior to any actual sales. eOne will not unreasonably withhold permission for Company to do so.

Company may delete Products periodically at its option. However, in order to permit necessary efficiencies of the operations, Company may not request deletions of any specific Product(s) other than at times reasonably


approved by eOne. eOne will announce such deletions to its accounts and is provided-six (6) months to recall such Product from its customers, except in the case of Transworld for which Twelve (12) months shall be allowed to make such recall.

5

**PRICING.** Company shall select the release dates for Products hereunder based on eOne's release schedule. Company shall determine the suggested retail list price of the Products to customers consistent with and selected among eOne's prices in similar price categories, and eOne shall attribute its applicable wholesale or dealer prices to such suggested list prices as it does for its own category of products distributed as set forth on Schedule D. However, in order to permit necessary efficiencies of the operations, Company may not establish or change the price category of any specific Product(s) other than at times reasonably approved by eOne. Company shall also determine the price category designation (i.e., top☐line, mid☐line, budget, etc.) of the Products and/or the suggested retail or other basic price category for sales of its Products hereunder, provided such selection is among the categories of pricing offered by eOne for its other distributed records, and the applicable wholesale pricing and discounts will apply to such Products as applied by eOne to its other Products. In addition, in the event that Company has selected one such price for a particular Product but later wishes to change same (in accordance with the provisions hereof), Company must give eOne at least ninety (90) days' prior notice of such change. If eOne accounts are granted a credit for on-hand inventory resulting from Company's price reduction on Products sold at any time in the past, eOne shall be entitled to take a credit against amounts otherwise owed Company in an amount equal to the Company Share of the credit granted to accounts by eOne.

eOne is authorized to grant reasonable and customary discounts on Company Products. Company's Products shall be subject to the same mandatory sales and promotional programs as eOne applies to comparable products distributed by eOne, including, but not limited to, those programs listed on Exhibit C attached hereto.

6

**ACCOUNTING & PAYMENT.** eOne will account for monthly invoiced gross sales, credits for returns, discounts, co-op advertising and net sales. eOne will render a monthly detailed statement within fifteen (15) days from the end of the month and remit a check within seventy (70) days following the end of the month (EOM) for the Company Share percentage as per Schedule A of monthly Net Sales (gross sales minus credits for returns, after discounts). eOne will retain the eOne Share percentage as per Schedule A of monthly Net Sales as its distribution commission. eOne invoices in its name, and assumes bad debt risk, unless Company has requested an account to be opened that eOne would not ordinarily grant credit to or Company has requested eOne to ship to an account which eOne has deemed (by written notice to Company) a credit risk for Company product. In such cases, bad debts are borne as follows: Company Share percentage by Company and eOne Share percentage by eOne. eOne's sometime refusal to ship Company Product to an account which eOne, in its reasonable business judgment, deems a general credit risk, shall not be considered a breach of eOne's obligations under this Agreement.

In the event eOne is charged by its customers, pursuant to a published policy of such customers, in connection with the non-compliance of the Product with such customers' published policies, any such costs charged to eOne shall be charged back to Company by eOne. Examples of such charges shall include, but are not limited to, charges for invalid or inappropriately sized Universal Pricing Codes ("UPCs"), defective Product returns charges, inappropriate or inadequate packaging or labeling, or charges for poor fill on orders of Product by such customers when corresponding unfilled orders from Company by eOne on such Product exist for a period in excess of thirty (30) days ("Non-compliance Fees"). In the event eOne is charged by its customers pursuant to a written communication from such customers, in connection with customer programs relating to the sales or stocking of Product generally, including but not limited to sales rebate programs, any such costs charged to eOne shall be charged back to Company by eOne ("Rebates"). Company shall be charged back any fees charged by accounts or third parties, transaction fees for vendor managed inventory to eOne for the purposes of merchandising the Product or so-called "slotting fees" (collectively "Merchandising Charges"). For the avoidance of doubt, no such costs shall be charged back to Company if eOne is responsible for incurring such costs. Company is granting eOne a first priority security interest in selected assets and is concurrently executing the Security Agreement as per Schedule C.





Handling charges, including but not limited to returns penalties, disincentives, loose pick charges and small order charges which eOne is able to levy against its accounts are excluded from the above payables calculation and are for eOne's sole benefit.

Any licensing income derived from Company Product from the Territory, initiated by eOne, and subject to Company's prior written approval, will be paid to Company less the eOne Share as set forth in Schedule A.

Exhibit B attached hereto sets forth certain additional fees to which Company is subject.

With respect to any other expenses eOne incurs on Company's behalf or in connection with its activities hereunder, eOne shall charge Company (and/or deduct from net receipts hereunder) such actual third party fees as eOne pays or incurs for such services or materials; provided that Company shall have the right to approve any expenses other than those incurred in accordance with eOne's customary business practices or as otherwise set forth in Exhibits B and C. If eOne undertakes the performance of a service which is normally a third party expense, then eOne shall only charge a fee commensurate with such third party expense or, in the absence of such a figure, then the fee generally charged by eOne in connection with such services for its other distributed products. To the extent that such expenses are incurred for a variety of products, not all of which are Products hereunder, then a reasonable allocation shall be made.

7

**RESERVES.** Until (1) year prior to the End Date, eOne will hold as a returns reserve twenty percent (20%) of Gross Sales. Should Company have returns in excess of Twenty (20%) for two (2) consecutive quarters, we will reevaluate to determine a commensurate reserve percentage going forward. Commencing one year prior to the End Date and continuing thereafter, eOne will hold a reserve in the amount of twenty-five percent (25%) of Gross Sales for all Products.

Reserves will be liquidated as of the accounting statement issued six (6) months following the month in which such reserve was actually taken (and paid 70 days thereafter). However, with respect to sales during the last six (6) months of the Term, the liquidations will be not be made until six (6) months after the end of the Term. Notwithstanding anything to the contrary set forth herein, if Company's next distributor of Products after the Term hereof is a bona-fide Major National Distributor (which is open with eOne's top thirty-five (35) accounts) and such distributor agrees to accept future returns (and notifies all accounts of such agreement) and to reimburse eOne for any payments or costs incurred in connection with returns which nevertheless come back to eOne, then eOne will liquidate the remaining reserves being held on the later of four (4) months from the expiration of the Term or four (4) months from receipt of the notices and assurances of the new distributor, and payment of such liquidated amounts being made seventy (70) days after the end of such applicable fourth month.

Notwithstanding anything to the contrary herein, if at any time a reserve is scheduled to be liquidated Company's account is "negative" (i.e. net proceeds actually derived from sales of Products are not sufficient to cover all fees, expenses and returns, including expenses incurred but not yet due), then eOne shall have the right to continue to maintain any such reserve until the end of the period during which Company's account is no longer negative.

For purposes of this agreement, "Gross Sales" shall be deemed to mean (A) the number of units of Products shipped and invoiced for payment multiplied by (B) the amount (after discounts) charged by eOne to eOne 's customers for all sales of Products.

eOne shall have the right (but not the obligation) to offset reserves against other monies owed by Company such as (without limitation) advertising reimbursements.

Only in the event that Company does not have another distributor of its product, eOne may, in its discretion, after the Term continue accepting returns and shall have the right to offset those returns and any attendant fees against reserves being held. If the amounts being held by eOne are not sufficient to cover the amount owed by Company, or if reserves have already been liquidated by eOne, then Company shall reimburse eOne for any additional amounts due eOne within sixty (60) days of eOne's rendering a statement setting forth the amount so owed.



Notwithstanding the foregoing eOne reserves the right to adjust the reserve for returns upward from time to time if eOne believes that based on return authorization requests and Soundscan data, actual returns will be significantly higher than anticipated.

8

**NEW RELEASE SOLICITATIONS**. eOne may produce quantities of one sheets for its new release publications from electronically transmitted information provided by Company, and will charge Company's account as set forth in Exhibit B (but there shall be no charge for any one sheet that is one-quarter page or smaller). Alternatively, and at eOne's election, eOne may utilize Company-submitted information regarding a particular new release Product to prepare a pre-formatted listing of such new release in eOne's release publications, and may charge Company's account as set forth in Exhibit B. eOne may also offer Company a premium position in the new release publications. The decision to accept such position is at Company's sole discretion. eOne reserves the right to demand prepayment for release book pages, if Company's account under this Agreement has a current balance due eOne.

9

**MARKETING, PROMOTION**. eOne is responsible for distribution only. Company and eOne are jointly responsible for retail-marketing and Company will provide adequate advertising funds for retail campaigns (the amount to be spent on such retail campaigns shall be at Company's sole discretion). For retail presentation and in-store promotion, Company provides a reasonable number of promotional copies free of charge to eOne. Company does hereby agree that eOne Entertainment Distribution shall be credited as the distributor of Company's Product in all reports generated by Nielsen Soundscan and/or Videoscan. Company will furthermore provide merchandising materials such as catalogs, booklets, flyers and posters, as they may be available, free of charge. Company will undertake institutional advertising, marketing, promotion and publicity, at its sole discretion and expense.

Co-op advertising with eOne accounts is subject to Company's prior approval, and will be charged-back to Company by eOne. eOne reserves the right to demand prepayment for co-op advertising, if Company's account under this Agreement has a current balance due eOne. eOne will use its best efforts to quote applicable account advertising rates, but cannot guarantee accuracy or account compliance. eOne will, however, charge Company the actual rate charged to eOne by the account for any Company advertising. Co-op advertising is debited to Company's account seventy (70) days after the end of the month in which the ad was authorized and booked. Since Company is in possession of such authorization, eOne is not required to provide further documentation. Company has full access to eOne's records and books, including advertising invoices and documentation and can obtain copies of such invoices and documentation during its audit of eOne.

10

**DISCLAIMERS**. Except as expressly set forth in this Agreement, neither party makes, and each party hereby specifically disclaims, any representations or warranties, express or implied, regarding the distribution services provided by eOne or any third party supplier, including any implied warranty of merchantability or fitness for a particular purpose and implied warranties arising from course of dealing or course of performance. Without limiting the generality of the foregoing, each party specifically disclaims any warranty regarding the profitability, success or value of any distribution services undertaken hereunder.

11

**SERVICE CHARGES.** Company will provide retail-ready Product to eOne according to industry standard and eOne's specifications. The non-compliance charges on Exhibit B apply for Product received which does not

6



meet eOne's specifications Company's account will be charged back for the costs of any expedited freight charges incurred by eOne to deliver Product to meet customer delivery requirements in the event Product is not delivered to eOne by Company in accordance with timelines published by eOne or required for a particular customer's promotional program.

The following service charges are agreed and can only be revised subject to mutual agreement: direct shipping charge (not inclusive of any freight charges), returns processing per returned unit, and scrap fee per destroyed unit, all as set forth on Exhibit B. Returns shall be restored to inventory, unless they are shop-worn or defective. Shop-worn Products are those Products, which by eOne's standards (generally applicable to Products of all of eOne's client labels) are deemed to be so damaged or excessively handled as to be unsalable and not economically salvageable. Defective Products are those Products which are properly designated by an account as defective or which by eOne's standards (generally applicable to Products of all of eOne's client labels) are deemed to be defective after visual inspection. eOne is hereby authorized to scrap all shop-worn, inactive and defective Products. Company will receive a notarized certificate of such destruction. Company may, at its election, designate certain SKU's as "Destroy Upon Return". In such instances, eOne will destroy the designated SKU's upon return to eOne until such time as Company informs eOne, in writing, of its desire to remove such designation. Any SKU's destroyed under such designation shall be subject to the scrap fee, but not the returns processing fee.

12

**REPRESENTATIONS & WARRANTIES.** Company hereby warrants and represents that

    (i) All artist, mechanical and other (including patents) royalties, as well as synchronization fees and master re-use fees, have been paid for in full. Company will account to the appropriate parties as regards mechanical royalties as may be required by U.S. law and report/pay quarterly to Harry Fox and the appropriate copyright owners.

    (ii) Materials embodied on the Products and the packaging therefore will not violate any law or infringe upon the rights of any party. As used herein "Material" shall mean and include, without limitation, all musical compositions, all performances, and dramatic, artistic, musical and literary material embodied on Records and Products and the names, biographical materials and likenesses, ideas and intellectual properties, and all other materials contained on the packaging thereof and advertising therefore, and the trademarks and logos used in connection therewith.

    (iii) No agreement of any kind heretofore or hereafter entered into by Company or its principals, officers, shareholders, directors, representatives, agents or other parties deriving rights from Company, will interfere in any manner with the complete performance of this Agreement.

    (iv) Company possesses all right and power to enter into and fully perform this Agreement, and the exercise of eOne's rights hereunder shall not obligate eOne to make payment to any third party or obtain consents from any third party.

    (v) Company is the exclusive owner or licensee of all copyrighted or copyrightable material and all trademarks, trade names, service marks and logos ("Proprietary Material") used by Company in connection with Products and that no other person or entity has any interest, adverse or otherwise therein and Company has licensed or procured the assignable right to use such trademarks or other Proprietary Material as Company sees fit in the case of labels distributed by Company under separate arrangement. Company's submission of any Proprietary Materials hereunder which include trademarks, trade names and/or logos will be deemed to be instructions to eOne to use same and a grant of license therefore, pursuant to the terms hereof. Company warrants and represents and said submission shall constitute a continuing warrant and representation that such materials do not infringe upon the rights of any parties and will not subject eOne to any claims, if used pursuant to the terms hereof.

    (vi) Company has not sold, assigned, transferred, leased, conveyed or granted a security interest, or otherwise disposed of, and will not sell assign, transfer, lease, convey or grant a security interest in and to Products except as a part of the sale of Company's entire business.





(vii) Subject to any third party agreements, eOne shall have the rights to use the names and approved likenesses of performers or producers whose performances are contained in or who performed services on the Products and approved biographical material concerning them for the purposes of advertising and promoting the products hereunder, and Company hereby grants eOne such rights.

(viii) Company is a corporation, duly organized, existing and in good standing under the laws of The United States.

(ix) eOne will not be obligated to accept returns of Company's Products after the expiration of the Term. If eOne elects to accept any such returns, eOne will invoice Company for the value of such returns equal to the amount paid or credited to customers therefore and all applicable offsets or charges in connection therewith and Company will promptly pay such amounts to eOne.

(x) Company agrees to define and label any and all Products described herein with "explicit contents" by affixing the Parental Advisory "Logo" to same and to label material in accordance with the guidelines and standards established by the Recording Industry Association of America ("RIAA") under the Parental Advisory Program or similar guidelines, and to label any Products in accordance with the applicable guidelines and standards established by the Motion Picture Association of America ("MPAA") or similar guidelines, if applicable.

(xi) Other than as set forth in Exhibit D, Company's rights to Products are and will be (except to the extent rights therein are granted to eOne) owned or under the control of Company for the duration of the Term (unless extended beyond the initial two (2) year period); and Company will not terminate or allow to expire or terminate any agreements relating to the Products hereunder whenever acquired, unless the term of such agreements expire prior to the termination of the Term hereof.

(xii) Company agrees, during and after the Term, at Company's sole expense, to defend, indemnify, save and hold eOne and eOne's parents, affiliates, successors, licensees, assigns, and the officers, directors and employees of the foregoing, free and harmless from and against any and all claims, damages, liabilities, costs and expenses (including without limitation legal expenses and counsel fees) ("Liabilities") occasioned by or arising out of any third party claim, demand or action or any breach or alleged breach of Company's or Principal's warranties, representations or agreements made herein, or Company's failure to perform in accordance with this Agreement and Company will reimburse eOne on demand for any costs incurred by eOne in respect of any such claim. Pending final determination of any such claim, demand or action, eOne may withhold sums due to Company in an amount sufficient to cover the anticipated Liabilities, unless Company obtains a surety bond acceptable to eOne in its sole reasonable discretion, with eOne as the sole beneficiary, in an amount sufficient in eOne's reasonable judgment to cover such anticipated Liabilities provided, however, that eOne shall release to Company any funds withheld pursuant to this paragraph 12(a)(xi) with respect to any such claim that has not resulted in a lawsuit within nine (9) months of eOne's notification thereof (except that eOne shall still be entitled to retain such amounts for the reimbursement of attorneys' fees). eOne will give Company prompt notice of any lawsuit instituted hereunder, and subject to eOne's written approval at the time that such lawsuit is instituted, Company will have the right to conduct the defense thereof, at Company's sole cost, with counsel of Company's choice. In the event that eOne does not approve of Company's choice of counsel and/or defense strategy, eOne shall have the right to take control of the defense of such action with mutually approved counsel at Company's expense. Each party hereto will cooperate with the other in any controversy or litigation that may arise with third parties concerning this Agreement or any of eOne's rights hereunder. This indemnity will in no way limit eOne's other rights or remedies against Company or Principal, whether under this Agreement or at law or equity in general. Any monies owing by Company or to be withheld under this section 13(a)(xi) may be deducted, set-off, and recouped from any monies due or becoming due to Company under this Agreement and Company agrees to reimburse eOne on demand for any payment made or incurred by eOne with respect to any liability or claim to which the foregoing indemnity applies (including, without limitation, reasonable attorneys' fees).

eOne agrees, during and after the Term, at eOne's sole expense, to defend, indemnify, save and hold harmless Company and Company's parents, affiliates, officers, directors, and employees from and against any and all claims, damages, liabilities, costs and expenses (including without limitation legal expenses and counsel fees) ("Liabilities") occasioned by or arising out of any third party claim, demand or action arising from any breach eOne's warranties, representations or agreements made herein that are not covered by Company's indemnification in the paragraph immediately above.

eOne Represents and warrants that it possesses all right and power to enter into and fully perform this Agreement and that it will exercise good faith business judgment in performing its obligations hereunder.





Each Principal represents and warrants that neither he nor any entity he owns or controls, in whole or in part: (i) will take or allow any action in violation of this Agreement or (ii) knows of any breach of any warranty by Company hereunder.

All warranties and representations under this paragraph 12 are subject to the security agreement, attached as Schedule "C" hereof.

## 13

**RECORDS ACCESS & AUDIT RIGHT**. Company has access to eOne's accounting records as they relate to Company at all times and may monitor daily activities via direct access to eOne's computer. Company reserves the right to audit eOne at any time during regular business hours once per year until two (2) years after Company's receipt of the final accounting hereunder. Such examination shall be conducted by an independent certified public accountant or such other qualified person designated by Company, provided that such "other qualified person" is approved in writing by eOne.

## 14

**SUSPENSION & TERMINATION**. Each of the following by Company shall constitute an event of default under this Agreement ("Events of Default"):

(i)    Material breach by either party's warranties or representations set forth herein, after notice of breach and failure to cure the breach within a thirty (30) day cure period.

(ii)    Repeated failure to provide eOne with advertising or promotional materials in a timely manner.

(iii)    Repeated failure to deliver sufficient inventory to satisfy third party orders;

(iv)    Breach of any of the exclusivity provisions set forth herein, after notice of breach and failure to cure the breach within a thirty (30) day cure period.

(v)    Failure by Company to repay to eOne the Unrecovered Balance on Company's account within thirty (30) days of eOne's request therefore;

(vi)    Failure by Company to provide the minimum number of full-length new releases (New Release Commitment) as per Schedule A during any twelve month period, after notice of breach and failure to cure the breach within a thirty (30) day cure period.

(vii)    Company's Net Sales through eOne during any calendar year do not exceed the amount (Turnover Commitment) specified on Schedule A;

(viii)    Company ceases to function as an entertainment media company.

If an Event of Default shall occur, then, in addition to any other rights or remedies which eOne may have, eOne shall have the right, upon written notice to Company at any time prior to the expiration of the Term to any or a combination of the following rights/remedies:

(i) to suspend the Term hereof, and eOne 's obligations to make any payments to Company hereunder, for the duration of such Event of Default;

(ii) to terminate the Term hereof without further obligation to Company, except in connection with Products, if any, distributed prior to such termination; and/or manner.

9





This Agreement may be terminated by Company prior to the expiration of the Term only upon the following material breaches, and only after notice of breach and failure to cure the breach within a thirty (30) day cure period:

    (i)      eOne fails to render its monthly statement or payment;

    (ii)     eOne refuses Company access to accounting records and inventory;

    (iii)    eOne ceases to function as a distributor.

Upon termination or expiration of this Agreement, Company may appoint a new bona fide distributor which distributor would be obligated to assume distribution and full returns responsibility immediately upon commencement of its distribution for all Company Products, and furthermore provided that all Company Products must continue to bear the same barcode and Company Label and logo as during eOne's distribution tenure. Company will provide eOne with a returns assumption letter of Company's new distributor to that effect and Company represents that the new distributor will furnish such letter to all accounts. This letter will state that the new distributor unconditionally agrees to accept all Company Product returns from accounts immediately, including deleted titles which are still returnable as per eOne's deletion notice(s). For purposes of this Agreement, "bona fide distributor" is defined as any established national music and/or video distributor which is recognized by all of eOne's top thirty accounts as a full-service distributor for Company Products and provided such distributor's returns assumption for Company Products is accepted by eOne's top thirty accounts and eOne is relieved from returns responsibility for Company Products.

Following the termination or expiration of the Term, eOne will not be obligated to accept or process returns of Products, and all such returns shall be Company's responsibility. After the Term, Company shall cause its next distributor of Products to accept from customers all returns of Products from customers hereunder and issue full credit to such customers. If eOne accepts such returns (which eOne has the option but not the obligation to do, after the Term), Company will reimburse eOne for the costs thereof at the full price credited to the customer, plus the expenses of returns set forth herein.

At the end of the Term, eOne shall proved the Company an inventory list of Company's Product, and Company shall have a period of ninety (90) days thereafter in which to elect whether to destroy inventory on hand or request their delivery to Grantor or Company's designee. With respect to returns accepted by eOne after expiration of the Term, Company shall make such election within ninety (90) days after each notice thereof from eOne. If Grantor requests such delivery, then provided that Company has paid the costs of such returns, and pays the cost of such delivery including the drop-shipping fee as set forth on Exhibit B, eOne will deliver such Products to the place designated. If Company has not notified eOne of its election within that ninety (90) day period (as applicable), eOne may destroy such inventory or charge Grantor a reasonable warehousing fee for holding such inventory.

"If Company does not intend to appoint, or does not appoint, a new, bona fide distributor, the following shall apply:

    (i)      Company shall notify eOne of its intent to self-distribute at least one hundred and eighty (180) days prior to the end of the Term. Failure by Company to make such notification will automatically trigger the implementation of the standard termination procedures as set forth earlier.

    (ii)     eOne shall, upon the expiration of the Term, calculate its potential returns exposure based on the total number of units shipped, less the number of units returned and the number of units sold according to Soundscan® reports (the "Returns Exposure"). eOne may establish a cash equal to 100% of the value of the Returns Exposure.

    (iii)    During the twelve (12) months following the expiration of the Term, to the extent that Company enters into direct sales relationships with eOne accounts, eOne shall adjust the amount of the cash reserve based upon the actual number of units purchased by such accounts and not sold or returned. In processing returns, with respect to accounts with which Company has not entered into a sales relationship, eOne shall be entitled to retain its distribution fee as set forth in the Agreement.





(iv)     Six (6) months after the expiration of the Term, eOne shall issue a notice of deletion of all Company Products to all eOne accounts with which Company has not established a direct sales relationship.

(v)      Company shall reimburse eOne for any payments or costs incurred in connection with returns of Company's Products which come back to eOne after the Termination date. Any additional charges or expenses that eOne incurs on Company's behalf (individually and collectively (the Charges) that may accrue during the fifteen (15) month period following the Termination Date ("Reimbursement Period"). Company shall reimburse the amount of the charges to eOne promptly following the conclusion of the "Reimbursement Period" and its receipt of an invoice specifying the amount of such Charges, which shall be net of any reserves eOne is holding as of the end of the "Reimbursement Period", for example (and for illustration purposes only,) if the charges which accrue during the Reimbursement Period amount to $30,000 and eOne is holding $20,000 in reserves as of the end of the Reimbursement Period, the amount owed by Company to eOne would be $10,000: however, if the charges which accrue during the Reimbursement Period amount to $20,000 and eOne is holding $30,000 in reserves as of the end of the Reimbursement Period the amount owed by Company to eOne would be $0.

(vi)     Fifteen (15) months after the expiration of the Term, eOne shall liquidate all reserves and reconcile Company's account, at which time either eOne will pay Company any balance due or Company will reimburse eOne any balance owed."

15

**ENTIRE DISTRIBUTION AGREEMENT**. This writing sets forth the agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements, and no modification, amendment, waiver, termination or discharge of this Agreement shall be binding upon either party unless confirmed by a written instrument signed by the party to be charged. In the event of any legal proceeding brought by any party hereto to enforce or interpret this Agreement or any of the terms contained herein, all parties shall be deemed to have jointly drafted this Agreement and neither side shall enjoy the benefit of any evidentiary presumptions based upon the identity of the drafter hereof.

16

**NOT PARTNERSHIP**. The relationship between eOne and the Company hereunder shall at all times be that of independent contractors; and nothing contained herein shall render or constitute the parties joint ventures, partners, agents or fiduciaries of each other. Neither eOne nor the Company shall hold itself out to third parties other than as set forth herein. Neither eOne nor Company shall have the right to execute any contract on behalf of the other, or incur any obligation for which the other may be liable, or otherwise bind the other; and, except as set forth herein, neither eOne nor Company shall be liable for any representation, warranty, covenant, agreement, act or omission of the other under this Agreement.

17

**CONFIDENTIALITY**. Neither party shall reveal the contractual terms of this Agreement to third parties during or after the term of this Agreement. Company furthermore understands that all memoranda, notes, records, reports, account lists, sales data, contracts and other documents generated by eOne and made available to Company concerning eOne's business shall be and remain eOne's property and shall be returned to eOne upon termination or earlier when requested by eOne. Both parties hereto acknowledge that eOne's books and records contain confidential trade information. Neither party nor any of either party's representatives shall at any time communicate to others or use on behalf of any person or entity any facts or information obtained as a result of such examination of eOne's books and records or any other activity hereunder. Both parties acknowledge and agree that a breach or threatened breach of the foregoing restrictions will cause irreparable injury and damage to the other, by reason of which either party shall be entitled to seek injunctive relief against the other (without the necessity of posting a bond or other security) in addition to any other remedies available to that party. Nothing herein shall be construed to prevent the disclosure of such information to either party's lawyers and accountants, to either party's business partners or prospective purchasers provided such





business partners and accountants enter into confidentiality agreements prior to the disclosure of such *information*.

18

**NOTICES.** *All notices required to be given to eOne shall be sent to eOne at its address first mentioned herein, and all notices to Company shall be sent to Company at its address first mentioned herein, or such other address as each party respectively may hereafter designate by notice in writing and shall be sent by registered or certified mail, return receipt requested, and the day of mailing of any such notice shall be deemed the date of the giving thereof (except notices of change of address, the date of which shall be the date of receipt by the receiving party). All notices to eOne shall be served upon eOne to the attention of the President at the above address. A copy of all notices to Company shall be sent to S'more Entertainment, Inc., 4335 Van Nuys Blvd., Suite 313, Sherman Oaks, CA 91403.*

19

**REVISION & ENFORCEABILITY.** Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

20

**JURISDICTION.** This Agreement shall be governed exclusively by the laws of the State of New York applicable to contracts made and to be performed entirely in such State. The parties agree to the exclusive jurisdiction of the Southern District Court of New York, New York.

Should either party initiate legal proceedings for the enforcement of this Agreement, the prevailing party shall additionally be entitled to recover all costs in maintaining or defending said legal proceeding, including but not limited to reasonable attorneys' fees.

21

**MISCELLANEOUS:**

(a) Company recognizes that the sale of Products is speculative and agrees that the judgment of eOne with regard to any matter affecting the sale, distribution and exploitation of such Products shall be binding and conclusive upon Company. Notwithstanding anything to the foregoing contained herein, eOne shall not be required to make any expenditures hereunder on Company's behalf, if, in eOne's opinion, Company does not have the financial ability to reimburse eOne therefore.

(b) eOne may, at its election, assign this Agreement or any of its rights or obligations hereunder to its parent, subsidiaries or other affiliated companies, or any person or entity acquiring all or substantially all of its assets and/or stock or with whom eOne may merge. Any rights and/or obligations hereunder or this Agreement in its entirety assigned pursuant to the foregoing may be similarly assigned by any assignee, and Company hereby agrees that eOne will be released from any liability hereunder to the extent of such assignment. Company may assign any of its rights or obligations under this Agreement, provided that Company provides eOne with prior written notice of such assignment, and that any such assignee assumes in writing (which must be provided to eOne) all of Company's obligations under this Agreement. Notwithstanding the foregoing, Company shall have the right to sell its business or all of the assets of its business without the consent of eOne.

(c) Neither party hereunder shall be entitled to take action by reason of any alleged breach by the other party of its obligations hereunder, unless such party has failed to remedy such breach within thirty (30) days following receipt of notice thereof, if such breach is capable of being cured during such thirty (30) day period, and if such breach is not reasonably capable of being cured during such period then within a reasonable time following receipt of the non-breaching party's notice thereof.

12



(d) If at any time during the Term, by reason of any act of God, fire, earthquake, flood, explosion, strike, labor disturbance, civil commotion, act of Government, its agencies or officers, any order, regulation, ruling or action of any labor union affecting eOne, or any shortage of or failure or delays in the delivery of materials, supplies, labor or equipment, or any other cause or causes beyond eOne's control (each, a "Force Majeure Event") the performance of any of eOne's obligations hereunder is delayed, interrupted or prevented, then the performance of such obligation shall be excused to the extent so delayed, interrupted or prevented and the Term hereof extended for the duration of such Force Majeure Event. No suspension imposed under this paragraph shall exceed six (6) months unless such contingency is industry-wide, in which event eOne shall have the right to suspend the applicable period for the duration of such contingency. If such suspension is not industry-wide, Company may request eOne by notice in writing given at any time after the expiration of such six (6) month period to terminate the suspension within sixty (60) days following eOne's receipt of Company's said notice. If eOne does not so terminate the suspension, the Term of this Agreement will terminate at the end of such sixty (60) day period, or at such earlier date as eOne may designate in writing, and the parties shall be deemed to have fulfilled all their obligations hereunder except those obligations which survive such termination, such as warranties and the obligation to pay proceeds, if payable.

(e) With respect to the production, distribution and sale of Product(s) and all amounts paid by eOne to Company hereunder, Company will be responsible and will pay all taxes and all third-party obligations in connection therewith. Without limiting the foregoing, it is understood that if any payment is due to any artist, musician or union arising out of the foregoing, that payment will be the responsibility of Company and eOne will not be responsible therefore.

(f) No waiver by any party hereto, whether express or implied, of its rights under any provision of this Agreement shall constitute a waiver of such party's rights under such provisions at any other time or a waiver of such party's rights under any other provision of this Agreement. No failure by any party hereto to take any action against any breach of this Agreement or default by the other party shall constitute a waiver of the former party's right to enforce any provision of this Agreement or to take action against such breach or default or any subsequent breach or default by such other party.

(j) This Agreement may be executed in one or more counterparts by the parties hereto, each of which when executed will be deemed an original and all of which taken together will constitute one and the same agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date set forth above.

S'more Entertainment, Inc. ("Company") FID# _____

By Amy Schorr, Authorized Signatory/Principal


Entertainment One U.S. LP
By Entertainment One GP LLC (its General Partner)

By Michael Rosenberg, President

13



Exhibit A

Existing Catalog Titles





## Exhibit B

The following are the current fees charged by eOne for the performance of certain services, which fees are subject to change. Fees for services not listed herein will be subject to quote by eOne.

| | |
|---|---|
| Refurbishing Fee: | $0.20 for each unit of Product returned for credit and refurbished and recycled into inventory. |
| Scrapping Fee: | $0.10 for each unit of Product returned for credit and scrapped |
| Excess Inventory: | $0.03 per month for each unit of excess Product |
| Direct Shipping Charge: | $0.10 per unit (plus all applicable freight charges) for units of Products shipped directly to non- eOne Customers or prepared for pick-up at Company's request. Such units shall only be sent in box-lot quantities. |

Non-compliance Charges: **(WAIVED)**

- fifteen (15) cents each per UPC barcode, shrink-wrapping or affixing of sticker per unit.

- forty (40) cents for each re-boxed item.

- one (1) dollar per box-lot-barcode.

New Release Solicitations:

The following are the current fees/penalties charged by eOne in connection with new release solicitations, which fees are subject to change. Fees/penalties that are not listed herein will be assessed at the same rates as are applied to other third party recordings distributed by eOne.

Monthly Audio New Release Book Charges:

- Full Page: $200

- Half Page: $100

- Third Page: $75

- Quarter Page: $50

- Front Cover: $400

- Back Cover: $300

- Inserts: $500 per page.

- Design fee for full page: $150*

- Upload cover art to B2B and Amazon.Com: $25 per title

(Selection of titles for the front and back cover is at the sole discretion of eOne.)

* Labels may choose to design full page or smaller ads only at no cost.

Labels may upload art to B2B and Amazon themselves. Artwork must be uploaded by product due at eOne Warehouse date to avoid charges.

15



Selection of titles for the front and back cover is at the sole discretion of eOne Entertainment.

* Labels may choose to design full page ads only at no cost.

Labels may upload art to B2B and Amazon themselves. Artwork must be uploaded by product due at eOne Warehouse date to avoid charges.

| | |
|---|---|
| Street Date Changes After Publication (Bumps/ Cancelations): | $1,000 per selection for each occurrence |
| Late Solicitation Pages Penalties (excl. singles): | $2,400 + Actual Cost for Insertion/Distribution |
| Product Bar Code or Item Number Corrections: | $2,000 + $.50 per unit processing + $.10 per unit labeling |
| Pricing Corrections after Publication of Solicitation Sheets: | $2,500 + Actual Charges from Customers |





**Exhibit C**

eOne's Current Standard Sales Programs:

1) New Release Program: All New Releases are sold at a 5% discount from 1st day of solicitation through the Friday following the release date.
2) Monthly Restocking Program: Entire eOne catalog is offered at a 7% discount for the first five (5) working days of each month.
3) Holiday Program:
    a. 5% OR 7% DISCOUNT & DATING THROUGH THE LAST DAY IN FEBRUARY (OF THE FOLLOWING YEAR) FOR ALL ORDERS PLACED THRU THE ORDER DUE DATE (WHICH IS USUALLY IN SEPTEMBER)
    b. DATING THROUGH THE LAST DAY IN FEBRUARY (OF THE FOLLOWING YEAR) (NO DISCOUNT) FOR ALL ORDERS RECEIVED BETWEEN ORDER DUE DATE AND NOVEMBER 1st OF CURRENT YEAR.
4) "Bumped" titles: If a title's release date is postponed, 5% New Release discount continues to apply to that particular title until the Friday following the new release date.





## Exhibit D

*Products for which grantor's rights expire during the Term*

Product Title                                         Date Rights Expire


# SCHEDULE A

Labels:  All labels and sub-labels distributed, owned or controlled by Company throughout the Term.

Commencement of Term:  Upon initial release of Company Product.

Company Share:  Eighty-five (85%) percent

eOne Share:  Fifteen (15%) percent

Contract Year New Release Commitment:  twenty (20)

Contract Year Turnover Commitment:  $500,000 (Five Hundred Thousand Dollars)

Advance:  eOne shall provide Company an advance of two hundred thousand ($200,000) upon completion of the following conditions:  (i) One hundred thousand ($100,000) dollars will be advanced upon the execution of this Agreement; and (ii) an additional one hundred thousand ($100,000) dollars will be advanced upon delivery of the first new release to eOne's distribution center.  The Advance shall be recouped in 10 equal monthly installments of twenty thousand ($20,000) dollars each starting with the first (1st) month of sales.  Any unrecouped portion of the monthly recoupment amount shall be added to the following month's recoupment amount.  All advances are fully recoupable from all payables and refundable if Agreement terminates prior to eone's recoupment of such advances.





# SCHEDULE B

To Distribution and Consignment Agreement dated **November 3, 2010** between **S'more Entertainment, Inc.** and **Entertainment One U.S. LP,** Company hereby appoints **Entertainment One Music dba Entertainment One LP** (hereafter "eOne Music Canada") as its exclusive national distributor for all of Company's audio Products for the territory of **Canada** (herein "Territory").

It is agreed and understood by all parties that the terms set out in the Distribution and Consignment Agreement referred to above will also govern this Schedule B which constitutes an agreement between Entertainment One Limited Partnership dba eOne Entertainment and Company with the following modifications and/or additions:

If and when applicable and provided Company is not receiving such fees directly from a collection society or association, eOne Canada further agrees to pay to Company a sum of money equal to eighty percent (80%) of all fees received by eOne Canada by way of levies or fees (including, for the avoidance of doubt, blank tape and compact disc levies) and for the public performance (including but not limited to broadcasts over radio or television) or records manufactured and sold hereunder. Whenever such fees are not computed and paid in direct relation to the public performance of such records such fees shall be computed for the purpose of this Agreement on a pro rata basis (i.e. by multiplying the total amount received by eOne Canada by a fraction, the numerator of which is the number of records manufactured and sold hereunder and the denominator of which is the total number of records sold in the Territory by or on behalf of Company).

Should Company request eOne Canada to handle institutional advertising, marketing, publicity and promotion, and eOne Canada agrees to do so, then eOne Canada will deduct any and all such "out of pocket and/or third party expenses" it incurs, from any and all monies due to Company. eOne Canada will not charge Company for its staff time in handling promotion as set out above. Such provided services will include servicing of samples to appropriate radio stations and print media plus follow-up (usually referred to as tracking services). eOne Canada will also service music television with video clips as provided by Company. eOne Canada will endeavour to get Company's artists as many radio and press reviews plus interviews when they are in town or through telephone interviews as artist and media are available.

Furthermore, where required by law within the Territory, Company is solely responsible for all costs relating to video censor/ratings board charges as applicable, as well as the cost of mandatory stamps to be affixed to Video Products shipped to the Province of Quebec.

The following provisions shall apply solely to the sale of Products in Canada:

Company also warrants and represents that all artist, synchronization, mechanical and other royalties (including patents) due for Product shipped to Canada have been paid for in full. Company further agrees to indemnify and hold eOne Canada harmless from and against any loss, cost, damage or expense (including court costs and reasonable attorney's fees) which may be incurred by eOne Canada as a result of any claim, action or proceeding brought against eOne Canada which is inconsistent with the warranties and representations made herein. However, if requested to do so by Company and eOne Canada agrees, then eOne Canada will apply for mechanical licences on Company's behalf and account mechanical royalties to the appropriate parties or their agents. eOne Canada will deduct such royalties due plus a 15% administration surcharge from any and all monies otherwise payable to Company. To facilitate eOne Canada's application for mechanical licences Company agrees, prior to or at the time of release of Product, to provide eOne Canada with label copy pertaining to each new release. Such label copy to include the title and timing of each track together with the composer, author and publisher information. If Company fails to provide said label copy in a timely fashion then the administration surcharge will increase to twenty-five percent (25%) to cover additional time needed to compile such information.

<u>Mass Placement</u>

Notwithstanding anything to the contrary contained in this Agreement and provided Company agrees to have Product placed with a Mass Merchant then Company and eOne Canada agree to the following special terms and conditions for the sale of Company's Products to Mass Merchants (Wal-Mart, Zellers or any new account that requires service organization).



(a) Company agrees that eOne Canada will charge to Company, a Placement and Servicing fee of One Dollar ($1.00) per unit shipped to the Mass Merchants, to cover placement, and mandatory servicing and stickering costs. eOne Canada will issue to Company, a monthly debit notice to cover the Mass Merchant Fee Charges. Company reserves the right to choose which, if any, of its Products will be placed at Mass Merchants.

(b) Co-op advertising, other advertising, and merchandising (including display stands and other point of sale materials) costs remain Company's sole responsibility; however, eOne agrees to obtain Company's prior written approval prior to implementing any such advertising or merchandising initiatives.

(c) For sales of Company Products to Wal-Mart, eOne Canada will pay Company according to the standard terms and conditions contained in this Agreement.

(d) As eOne Canada's relationship with Zellers is that of a consignment basis, eOne Canada will pay Company for sales of Company Product by Zellers, no later than thirty (30) days from eOne Canada's actual receipt of payment from Zellers, and based on the number of units reported as sold and paid for by Zellers. eOne Canada warrants that all such consignment Product shall remain the Property of Company until such time as such Product is reported as sold by Zellers and payment for such is received by or credited to eOne Canada.

(e) Should shrinkage exceed three (3) percent per any particular title Company and eOne Canada agree to share equally the out of pocket manufacturing costs related to such excess shrinkage of Company Product at Zellers. Shrinkage is defined as total units shipped to Zellers, less total units returned by Zellers and total units paid for by Zellers.

**Canadian Dealer Cost Prices:**

**Audio:**   $13.95 (Price Code: LN) per full length Compact-Disc,
$8.17 (Price Code: GB) per full length Cassette,
$21.50 (Price Code: SG) for double CDs,
$7.50 (Price Code: FG) for mid-price Compact Disc,
$3.50 (Price Code: BG) for mid-priced Cassettes,
$5.50 (Price Code: DG) for Compact-Disc singles or budget CDs,
$2.50 (Price Code: AG) for Cassette Singles or budget MCs

**Company share:**   Eighty-five (85%) percent.

**eOne Canada share:**   Fifteen (15%) percent

**Currency:**   Canadian Funds



## SCHEDULE C

Security Agreement.

(a)     As collateral security for Company's full and timely performance and observance of Company's obligations under this agreement, including but not limited to Company's payment over of royalties (including artist, mechanical and synchronization royalties) and securing sample and guest artist clearances, if any, Company hereby grant to eOne a first priority security interest in and to all of Company's right, title and interest in and to: (i) all existing and after-acquired inventory of the Product in eOne's control during the Term, and (ii) any proceeds from the sale or other disposition of the same, therefrom (collectively, the "Collateral"), specifically excluding any copyright therein.  Company hereby agrees to defend eOne's right, title, lien and security interest in and to the Collateral against the claims and demands of all persons whomsoever.

(b)     If any of Company's obligations are not timely fulfilled, eOne shall have the right, upon written notice and failure to cure within thirty (30) days of Company's receipt of such notice  (i) to sell, resell, assign and deliver, in eOne's discretion, all or any of the Collateral, in one or more parcels at the same or different times, at public or private sale, for cash, upon credit or for future delivery, and (ii) to take any and all other actions permitted to be taken by a secured party under applicable law, including the Uniform Commercial Code.

(c)     The grant of the security interest in the Collateral shall be evidenced by UCC-1 Financing Statements (the "Financing Statements") in form and substance satisfactory to eOne to be executed by Company and delivered to eOne simultaneously with the delivery of the Product.  The security interest in the Collateral created hereby shall continue in full force and effect for the Term.  In the event Company fails to deliver the Financing Statement, eOne may perfect eOne's security interest by unilaterally filing the Financing Statement, and Company hereby grants eOne an irrevocable power of substitution coupled with an interest, as Company's attorney-in-fact and agent to file on Company's behalf the Financing Statement without Company's signature with respect to any and all of the Collateral.  Notwithstanding the foregoing, eOne agrees not to exercise such power of attorney unless Company does not execute and return to eOne such instrument, documents or other papers within ten (10) days after receipt thereof.   Company agrees that Company shall execute and acknowledge such other documents or instruments as eOne may deem reasonably necessary in order to perfect any and all elements of the security interest granted hereinabove including but not limited to the aforementioned Financing Statements.

(d)     Company specifically warrants and represents that Company owns all right, title and interest in and to the Collateral, free and clear of all mortgages, charges, liens, encumbrances or security interests. Company will not hereafter suffer or permit any lien, charge, assignment, encumbrance or security interest of any kind with respect to the Collateral offered herein to be or become prior to superior to eOne's rights other than statutory laboratory liens which will be discharged in the normal course of business.

(e)     Company agrees that each and every term and agreement contained in any note executed and delivered by Company to eOne to evidence eOne's security interest in the Collateral shall be incorporated into and form a part hereof as if the same were set forth in full herein; all rights, remedies and powers granted to eOne herein or in any such note or other agreement given by Company to eOne shall be cumulative and may be exercised singly or concurrently; that the exercise of any right or remedy shall not preclude the exercise of any other right or remedy given herein or in any note or agreement given by Company to eOne; and that eOne shall have all the rights and remedies of a secured party under New York Uniform Commercial Code and other applicable law(s).




**SCHEDULE D**

## eOne *PRICING SCHEDULE*

**Current as of:** 7/20/2009      **Last Revised:** 5/18/2009

CD/DVD-AUDIO/SACD/DUAL DISC

| Sugg. List Price | Cost Price | Code |
|---|---|---|
| 2.98 | $1.75 | AA |
| 3.98 | $2.50 | AB |
| 4.98 | $3.00 | AC |
| 5.98 | $3.50 | AD |
| 6.98 | $4.50 | AE |
| 7.98 | $5.20 | AF |
| 8.98 | $5.84 | AG |
| 9.98 | $6.50 | AH |
| 10.98 | $6.97 | AJ |
| 11.98 | $7.90 | AK |
| 12.98 | $8.40 | AL |
| 13.98 | $9.15 | AM |
| 14.98 | $9.75 | AN |
| 15.98 | $10.37 | AP |
| 16.98 | $10.78 | AQ |
| 17.98 | $11.41 | AR |
| 18.98 | $12.02 | AS |
| 19.98 | $12.74 | AT |
| 20.98 | $13.40 | AU |
| 21.98 | $13.99 | AV |
| 22.98 | $14.81 | AW |
| 23.98 | $15.40 | AX |
| 24.98 | $16.25 | AY |
| 25.98 | $16.60 | DM |
| 26.98 | $17.50 | AZ |
| 27.98 | $18.28 | BA |
| 28.98 | $18.75 | BB |
| 29.98 | $19.40 | BC |
| 31.98 | $20.55 | BD |
| 32.98 | $21.20 | BE |
| 33.98 | $21.80 | BF |
| 34.98 | $22.50 | BG |
| 35.98 | $23.14 | BH |
| 36.98 | $24.00 | BJ |
| 38.98 | $25.18 | BK |
| 39.98 | $26.15 | BL |
| 42.98 | $27.95 | BM |
| 44.98 | $28.97 | BN |
| 46.98 | $29.95 | BP |
| 47.98 | $30.90 | BQ |
| 49.98 | $31.99 | BR |
| 50.98 | $32.94 | BS |

## Music Video price codes

| Sugg. List Price | Cost Price | Code |
|---|---|---|
| 2.99 | $1.85 | MA |
| 4.99 | $3.09 | MB |
| 5.99 | $3.71 | MC |
| 7.99 | $4.95 | MD |
| 8.99 | $5.57 | ME |
| 9.99 | $6.19 | MF |
| 10.99 | $6.81 | MG |
| 11.99 | $7.43 | MH |
| 12.99 | $8.05 | MI |
| 13.99 | $8.67 | MJ |
| 14.99 | $9.29 | MK |
| 15.99 | $9.91 | ML |
| 16.99 | $10.53 | MM |
| 17.99 | $11.15 | MN |
| 18.99 | $11.77 | MO |
| 19.99 | $12.39 | MP |
| 20.99 | $13.01 | MQ |
| 21.99 | $13.63 | MR |
| 22.99 | $14.25 | MS |
| 23.99 | $14.87 | NI |
| 24.99 | $15.49 | MT |
| 25.99 | $16.11 | MU |
| 26.99 | $16.73 | MV |
| 27.99 | $17.35 | MW |
| 29.99 | $18.59 | MX |
| 32.99 | $20.45 | MY |
| 33.99 | $21.07 | NN |
| 34.99 | $21.69 | MZ |
| 35.99 | $22.31 | NK |
| 36.99 | $22.93 | NA |
| 39.99 | $24.79 | NB |
| 42.99 | $26.65 | NC |
| 44.99 | $27.89 | ND |
| 45.99 | $28.51 | NP |
| 49.99 | $30.99 | NE |
| 54.99 | $34.09 | NQ |
| 56.99 | $35.33 | NR |
| 59.99 | $37.19 | NG |
| 69.99 | $43.39 | NF |
| 84.99 | $52.69 | NS |
| 87.99 | $54.55 | NT |
| 89.99 | $55.79 | NH |





| | | |
|---|---|---|
| 52.98 | $34.49 | BT |
| 54.98 | $35.41 | BU |
| 55.98 | $36.08 | BV |
| 59.98 | $38.60 | BW |
| 61.98 | $39.95 | BX |
| 63.98 | $41.20 | BY |
| 64.98 | $42.24 | BZ |
| 69.98 | $45.70 | DB |
| 74.98 | $48.28 | DC |
| 79.98 | $51.50 | DD |
| 84.98 | $54.80 | DE |
| 89.98 | $58.50 | DF |
| 99.98 | $64.20 | DG |
| 105.98 | $68.50 | DH |
| 114.98 | $79.00 | DU |
| 119.98 | $82.50 | DJ |
| 134.98 | $93.60 | EG |
| 139.98 | $95.85 | DT |
| 149.98 | $102.70 | DS |
| 169.98 | $116.50 | DN |
| 179.98 | $114.10 | DP |
| 189.98 | $120.00 | DU |
| 194.98 | $133.50 | DK |
| 209.98 | $135.80 | DY |
| 239.98 | $150.05 | DZ |
| 289.98 | $179.00 | EA |
| 316.98 | $190.00 | EB |
| 358.98 | $205.20 | EC |
| 499.98 | $325.00 | DL |
| 638.98 | $415.00 | ED |
| 716.98 | $446.00 | EF |

### CASSETTE/LP*

| Sugg. List Price | Cost Price | Code |
|---|---|---|
| 3.49 | 2.23 | FE |
| 3.98 | 2.55 | CA |
| 4.98 | 3.19 | CB |
| 5.98 | 3.83 | CC |
| 6.98 | 4.47 | CD |
| 7.98 | 5.11 | CE |
| 9.98 | 6.39 | CG |
| 10.98 | 7.03 | CI |
| 11.98 | 7.67 | CJ |
| 12.98 | 8.31 | CL |
| 13.98 | 8.95 | CM |
| 14.98 | 9.95 | CN |
| 15.98 | 10.61 | CP |
| 16.98 | 11.25 | CQ |
| 17.98 | 11.94 | CH |
| 18.98 | 12.60 | CO |
| 19.98 | 13.27 | CR |
| 20.98 | 13.94 | CW |
| 21.98 | 14.60 | CX |
| 22.98 | 15.26 | CS |
| 24.98 | 18.95 | CT |
| 25.98 | 19.49 | FA |
| 28.98 | 21.99 | FG |
| 29.98 | 22.49 | CU |
| 31.98 | 23.99 | FB |
| 34.98 | 26.25 | FI |
| 35.98 | 26.99 | FC |
| 36.98 | 27.75 | FH |
| 39.98 | 29.99 | CV |
| 44.98 | 33.74 | FF |
| 47.98 | 35.99 | CZ |
| 49.98 | 37.49 | CY |
| 54.98 | 41.24 | CK |
| 89.98 | 67.49 | FD |

| | | |
|---|---|---|
| 99.99 | $61.99 | NJ |
| 199.99 | $123.99 | NL |

### SINGLES/CD-5/12" VINYL*

| Sugg. List Price | Cost Price | Code |
|---|---|---|
| 1.98 | $1.15 | RI |
| 2.49 | $1.45 | RJ |
| 2.98 | $1.75 | RK |
| 3.49 | $1.85 | RA |
| 3.98 | $2.55 | RB |
| 4.49 | $2.40 | RC |
| 4.98 | $2.95 | RD |
| 5.98 | $3.43 | RE |
| 6.49 | $3.80 | RF |
| 7.49 | $4.40 | RG |
| 7.98 | $4.69 | RH |
| 8.98 | $5.75 | CF |
| 11.98 | $6.99 | RL |
| 12.98 | $7.59 | RM |

### MERCHANDISE & AUDIO BOOKS

| Sugg. List Price | Cost Price | Code |
|---|---|---|
| 4.98 | $2.74 | SC |
| 6.97 | $3.49 | SW |
| 13.98 | $7.69 | WC |
| 17.98 | $8.99 | XB |
| 19.98 | $12.74 | AT |
| 22.98 | $11.49 | XC |
| 29.98 | $14.99 | LA |
| 69.8 | $34.90 | S1 |
| 209.4 | $104.70 | S3 |







## AMENDMENT TO DISTRIBUTION AGREEMENT

Dated as of January 18, 2011

Between:      S'more Entertainment , Inc.
4335 Van Nuys Blvd., Suite 313
Sherman Oaks, CA 91403

("Company")

And:      ENTERTAINMENT ONE U.S. LP
22 Harbor Park Drive
Port Washington, NY 11050
Tel: (516) 484-1000 Fax: (516) 484-4588

("eOne")

WHEREAS, eOne and Company previously entered into a Distribution Agreement dated as of November 3, 2010 (the "Agreement") in connection with the distribution by eOne of Company's Products as defined in the Agreement; and

WHEREAS, eOne and Company now desire to amend the Agreement to include DEMD rights among the distribution rights granted;

NOW, THEREFORE, the parties agree as follows:

1. Section 1 of the Agreement ("Distribution Grant") is hereby amended by deleting the first two paragraphs in their entirety and replacing them with the following:

    **DISTRIBUTION GRANT.** Except as set forth herein, the principal officers and directors of Company ("Principal(s)") and Company irrevocably grant to eOne, for the Term and in the Territory, the exclusive right under copyright and otherwise, in any and all media, whether now known or hereafter developed, to be the sole and exclusive distributor of Records and/or Home Videos owned, controlled by, produced by, distributed by, or otherwise affiliated with, Company, Principals or Affiliates (as used herein, "Affiliates" mean persons or entities owning, controlling, owned by, controlled by or under common control with Company or Principal(s) or any of them and those record labels or other entities whose products are distributed by Company) currently or during the Term, directly or indirectly (which Company warrants and represents includes without limitation all the Products (as defined below and listed on Exhibit A annexed hereto), through all wholesale and retail channels. The reference to Principal(s) in this paragraph is not intended to assign or impute any responsibility or liability to such Principal(s) in the event that there are any defects in the rights that have been granted to eOne hereunder by Company, the sole responsibility for which shall lie with Company. The responsibility of the Principal(s) is and shall be limited to ensuring that the Record

[S'more Amendment-DEMD Rights.doc]



and Home Video distribution rights controlled by Principal(s) and/or Company and/or Affiliates for the Territory are irrevocably and exclusively granted to eOne during the Term subject to the terms of this Agreement and any attempt by Principal(s) to circumscribe the exclusive nature of this Agreement by licensing or consigning the rights to any Products in the Territory during the Term to a third party shall be deemed a material breach of this Agreement.

"Audio and Video Products" or "Products" are all of Company's Compact-Discs, Minidiscs, Digital Versatile Discs (DVDs), Blu-Ray Discs or any other mass-marketable device containing pre-recorded music and/or visual images by which sound and/or visual images may be disseminated now or in the future, including but not limited to sales via Digital Entertainment Media Distribution ("DEMD"). "DEMD" means any transmission to the consumer, whether sound alone, sound coupled with an image, or sound coupled with data, in any form, analog or digital, now known or later developed (including, but not limited to, "cybercasts," "webcasts," "streaming audio," "streaming audio/video," "digital downloads," direct broadcast satellite, point-to-multipoint satellite, multipoint distribution service, point-to-point distribution service, hotel and motel distribution services, cable system, telephone system, broadcast station, ring tones, ring backs, voice tones, pictones, and text messaging), and any other forms of transmission now known or hereafter devised) whether or not such transmission is made on-demand or near on-demand, whether or not a direct or indirect charge is made to receive the transmission and whether or not such transmission results in a specifically identifiable reproduction by or for any transmission recipient. For the avoidance of doubt, Company can grant no broadcast rights. Therefore all forms of standard and non-standard Television, now or hereafter existing (including without limitation, pay television, satellite television, digital, analog and standard television, cable television, and broadcast television) shall be excluded from the definition of DEMD. All rights granted by Company are limited only to the rights they in turn have been granted.

2. Section 6 ("Accounting and Payment") is hereby amended by adding the following:

Notwithstanding the foregoing, for sales via DEMD, eOne shall apply to Company's account the Company DEMD Share percentage as per Schedule A of eOne's Net Receipts from sales via DEMD, less any (i) encoding, archiving and delivery costs, (ii) expenditures made by eOne on behalf of and approved by Company in connection with the promotion of the Products for sales via DEMD, (iii) any approved agent or sublicensee fees, and (iv) any fees approved by Company for eOne's marketing or other services in connection with sales via DEMD, thirty (30) days after the end of the month in which they are received by eOne. "Net Receipts" means the amounts actually paid to eOne by Digital Service Providers for the exploitation of the DEMD Rights. Net Receipts shall not include any general advance unrelated to Company's particular Products which eOne may have received or may receive from any Digital Service Provider. For the avoidance of doubt, eOne does not retain any reserve against returns in connection with the exploitation of the DEMD Rights.

3. Exhibit A is hereby amended by adding the following:

Company DEMD Share: Eighty-five percent (85%)

eOne DEMD Share: Fifteen percent (15%)

Home Video Advance: In consideration of the rights granted to its Video Products, eOne shall provide Company an additional advance of two hundred thousand ($200,000) upon completion of the following conditions: (i) One hundred thousand ($100,000) dollars will be



advanced upon the execution of this Amendment; and (ii) an additional one hundred thousand ($100,000) dollars will be advanced upon delivery of the first new Video release to eOne's distribution center. The Advance shall be recouped in 10 equal monthly installments of twenty thousand ($20,000) dollars each starting with the month of May 2011. Any unrecouped portion of the monthly recoupment amount shall be added to the following month's recoupment amount. All advances are fully recoupable from all payables and refundable if Agreement terminates prior to eOne's recoupment of such advances.

4. Exhibit B is hereby amended by adding the following:

Monthly Video New Release Book Charges:

- Full Page: $1100

- Front Cover: $3000

- Back Cover: $1500

- Design fee for full page: $150*

- Inserts: Price T.B.D. on a case by case basis.

Selection of titles for the front and back cover is at the sole discretion of Entertainment One.

* Labels may choose to design full page ads only at no cost.

Labels may upload art to B2B and Amazon themselves. Artwork must be uploaded by product due at eOne Warehouse date to avoid charges.

**Video** - $5.50 (Price Code: E) for videos or DVDs carrying a suggested list price of $ 9.99; $6.54 (Price Code: EP) for videos or DVDs carrying a suggested list price of $ 11.99; $7.17 (Price Code FB) for videos or DVDs carrying a suggested list price of $12.99; $8.25 (Price Code: GE) for videos or DVDs carrying a suggested list price of $14.99; $11.00 (Price Code: J) for videos or DVDs carrying a suggested list price of $19.99; $13.95 (Price Code: LN) for videos or DVDs carrying a suggested list price of $24.99 $16.50 (Price Code: OG) for videos or DVDs carrying a suggested list price of $29.99; $19.50 (Price Code: RG) for multi-packs of videos or DVDs carrying a suggested list price of $34.99; $22.00 (Price Code: T) for multi-packs of videos or DVDs carrying a suggested list price of $39.99; $38.50 (Price Code: 2RE) for special video or DVD packages carrying a suggested list price of $69.99.

5. Schedule D shall be deleted in its entirety and replaced with the attached Schedule D.

6. All other terms of the Agreement shall remain in full force and effect, except as amended hereby.

7. All terms not defined herein shall have the meaning ascribed thereto in the Agreement.

8. This Amendment shall be governed by the laws of the State of New York and by the laws of the United States applicable therein.

[S'more Amendment-DEMD Rights.doc]



9. This Amendment may be executed in any number of counterparts as are deemed necessary by the parties, with the same effect as if all the parties hereto had signed the same document. Each counterpart is as valid and binding on all parties hereto as every other counterpart, and all counterparts shall be construed together and shall constitute one document.

10. Each provision of this Amendment is intended to be severable and if any provision is illegal or invalid in any jurisdiction, this will not affect the validity of such provision in any other jurisdiction or the validity of the remainder.

11. This Amendment shall inure to the benefit of and be binding upon the parties hereto, their respective heirs, executors, administrators, successors and permitted assigns.

ACCEPTED AND AGREED TO:          ACCEPTED AND AGREED TO:

**S'MORE ENTERTAINMENT, INC.**       **ENTERTAINMENT ONE U.S. LP**
BY: ENTERTAINMENT ONE GP LLC
(Its General Partner)

By: _____      By: _____
Arny Schorr, President           Michael Rosenberg, President

Its: _____      Its: _____



# SCHEDULE D

## E1 PRICING SCHEDULE

**Current as of:** 1/7/2011      **Last Revised:** 6/17/10

| CD/DVD-AUDIO/SACD/DUAL DISC | | | DVD-VIDEO/VHS | | | Music Video price codes | | |
|---|---|---|---|---|---|---|---|---|
| Sugg. | Cost | | Sugg. | Cost | | Sugg. | Cost | |
| List Price | Price | Code | List Price | Price | Code | List Price | Price | Code |
| 2.98 | $1.75 | AA | 5.98 | $3.29 | TA | 2.99 | $1.85 | MA |
| 3.98 | $2.50 | AB | 7.98 | $4.39 | VA | 4.99 | $3.09 | MB |
| 4.98 | $3.00 | AC | 8.98 | $4.94 | TB | 5.99 | $3.71 | MC |
| 5.97 | $3.25 | O1 | 9.98 | $5.49 | VB | 7.99 | $4.95 | MD |
| 5.98 | $3.50 | AD | 11.98 | $6.59 | TC | 8.99 | $5.57 | ME |
| 6.98 | $4.50 | AE | 12.98 | $7.14 | VC | 9.99 | $6.19 | MF |
| 7.98 | $5.20 | AF | 13.98 | $7.69 | WC | 10.99 | $6.81 | MG |
| 8.98 | $5.84 | AG | 14.98 | $8.24 | VD | 11.99 | $7.43 | MH |
| 9.98 | $6.50 | AH | 15.98 | $8.79 | WD | 12.99 | $8.05 | MI |
| 10.98 | $6.97 | AJ | 16.98 | $9.34 | WB | 13.99 | $8.67 | MJ |
| 11.98 | $7.90 | AK | 17.98 | $9.89 | VE | 14.99 | $9.29 | MK |
| 12.98 | $8.40 | AL | 19.98 | $10.99 | VF | 15.99 | $9.91 | ML |
| 13.98 | $9.15 | AM | 21.98 | $12.09 | WL | 16.99 | $10.53 | MM |
| 14.98 | $9.75 | AN | 22.98 | $12.64 | WG | 17.99 | $11.15 | MN |
| 15.98 | $10.37 | AP | 24.98 | $13.74 | VG | 18.99 | $11.77 | MO |
| 16.98 | $10.78 | AQ | 26.98 | $14.84 | VO | 19.99 | $12.39 | MP |
| 17.98 | $11.41 | AR | 27.98 | $15.39 | VI | 20.99 | $13.01 | MQ |
| 18.98 | $12.02 | AS | 29.98 | $16.49 | VH | 21.99 | $13.63 | MR |
| 19.98 | $12.74 | AT | 32.98 | $18.14 | WN | 22.99 | $14.25 | MS |
| 20.98 | $13.40 | AU | 34.98 | $19.24 | VJ | 23.99 | $14.87 | NI |
| 21.98 | $13.99 | AV | 35.98 | $19.79 | WM | 24.99 | $15.49 | MT |
| 22.98 | $14.81 | AW | 39.98 | $21.99 | VK | 25.99 | $16.11 | MU |
| 23.98 | $15.40 | AX | 44.98 | $24.74 | WE | 26.99 | $16.73 | MV |
| 24.98 | $16.25 | AY | 49.98 | $27.49 | VL | 27.99 | $17.35 | MW |
| 25.98 | $16.60 | DM | 54.98 | $30.24 | WJ | 29.99 | $18.59 | MX |
| 26.98 | $17.50 | AZ | 59.98 | $32.99 | WF | 32.99 | $20.45 | MY |
| 27.98 | $18.28 | BA | 69.98 | $38.49 | VM | 33.99 | $21.07 | NN |
| 28.98 | $18.75 | BB | 74.98 | $41.24 | WH | 34.99 | $21.69 | MZ |
| 29.98 | $19.40 | BC | 79.98 | $43.99 | WA | 35.99 | $22.31 | NK |
| 31.98 | $20.55 | BD | 84.98 | $46.74 | VU | 36.99 | $22.93 | NA |
| 32.98 | $21.20 | BE | 89.98 | $49.49 | VN | 39.99 | $24.79 | NB |
| 33.98 | $21.80 | BF | 99.98 | $54.99 | VP | 42.99 | $26.65 | NC |
| 34.98 | $22.50 | BG | 109.98 | $60.49 | VQ | 44.99 | $27.89 | ND |
| 35.98 | $23.14 | BH | 119.98 | $65.99 | VX | 45.99 | $28.51 | NP |
| 36.98 | $24.00 | BJ | 129.98 | $71.49 | VW | 49.99 | $30.99 | NE |
| 38.98 | $25.18 | BK | 149.98 | $82.49 | WI | 54.99 | $34.09 | NQ |
| 39.98 | $26.15 | BL | 89.82 | $49.41 | P2 | 56.99 | $35.33 | NR |
| 42.98 | $27.95 | BM | 134.82 | $74.16 | P3 | 59.99 | $37.19 | NG |
| 44.98 | $28.97 | BN | 169.98 | $93.49 | WK | 69.99 | $43.39 | NF |
| 46.98 | $29.95 | BP | 269.98 | $148.23 | VR | 84.99 | $52.69 | NS |
| 47.98 | $30.90 | BQ | 349.98 | $192.78 | VS | 87.99 | $54.55 | NT |
| 49.98 | $31.99 | BR | 389.98 | $215.64 | VT | 89.99 | $55.79 | NH |
| 50.98 | $32.94 | BS | | | | 99.99 | $61.99 | NJ |



| | | |
|---|---|---|
| 52.98 | $34.49 | BT |
| 54.98 | $35.41 | BU |
| 55.98 | $36.08 | BV |
| 59.98 | $38.60 | BW |
| 61.98 | $39.95 | BX |
| 63.98 | $41.20 | BY |
| 64.98 | $42.24 | BZ |
| 69.98 | $45.70 | DB |
| 74.98 | $48.28 | DC |
| 79.98 | $51.50 | DD |
| 84.98 | $54.80 | DE |
| 89.98 | $58.50 | DF |
| 99.98 | $64.20 | DG |
| 105.98 | $68.50 | DH |
| 114.98 | $79.00 | DU |
| 119.98 | $82.50 | DJ |
| 134.98 | $93.60 | EG |
| 139.98 | $95.85 | DT |
| 149.98 | $102.70 | DS |
| 169.98 | $116.50 | DN |
| 179.98 | $114.10 | DP |
| 189.98 | $120.00 | DV |
| 194.98 | $133.50 | DK |
| 209.98 | $135.80 | DY |
| 239.98 | $150.05 | DZ |
| 289.98 | $179.00 | EA |
| 316.98 | $190.00 | EB |
| 358.98 | $205.20 | EC |
| 499.98 | $325.00 | DL |
| 638.98 | $415.00 | ED |
| 716.98 | $446.00 | EF |

**CASSETTE/LP***

| Sugg. List Price | Cost Price | Code |
|---|---|---|
| 3.49 | 2.23 | FE |
| 3.98 | 2.55 | CA |
| 4.98 | 3.19 | CB |
| 5.98 | 3.83 | CC |
| 6.98 | 4.47 | CD |
| 7.98 | 5.11 | CE |
| 9.98 | 6.39 | CG |
| 10.98 | 7.03 | CI |
| 11.98 | 7.67 | CJ |
| 12.98 | 8.31 | CL |
| 13.98 | 8.95 | CM |
| 14.98 | 9.95 | CN |
| 15.98 | 10.61 | CP |
| 16.98 | 11.25 | CQ |
| 17.98 | 11.94 | CH |
| 18.98 | 12.60 | CO |
| 19.98 | 13.27 | CR |
| 20.98 | 13.94 | CW |
| 21.98 | 14.60 | CX |
| 22.98 | 15.26 | CS |
| 23.98 | 15.49 | FL |
| 24.98 | 16.49 | CT |
| 25.98 | 19.49 | FA |
| 28.98 | 21.99 | FG |
| 29.98 | 22.49 | CU |
| 31.98 | 23.99 | FB |
| 32.98 | 24.74 | FJ |
| 34.98 | 26.25 | FI |
| 35.98 | 26.99 | FC |
| 36.98 | 27.75 | FH |
| 39.98 | 29.99 | CV |
| 44.98 | 33.74 | FF |
| 47.98 | 35.99 | CZ |
| 49.98 | 37.49 | CY |
| 54.98 | 41.24 | CK |
| 64.98 | 45.49 | FS |
| 74.98 | 48.49 | FM |
| 79.98 | 51.99 | FN |
| 84.98 | 55.49 | FR |
| 89.98 | 58.49 | FD |
| 109.98 | 82.49 | FK |
| 129.98 | $84.49 | FO |

| | | |
|---|---|---|
| 199.99 | $123.99 | NL |

**SINGLES/CD-5/12" VINYL***

| Sugg. List Price | Cost Price | Code |
|---|---|---|
| 1.98 | $1.15 | RI |
| 2.49 | $1.45 | RJ |
| 2.98 | $1.75 | RK |
| 3.49 | $1.85 | RA |
| 3.98 | $2.55 | RB |
| 4.49 | $2.40 | RC |
| 4.98 | $2.95 | RD |
| 5.98 | $3.43 | RE |
| 6.49 | $3.80 | RF |
| 7.49 | $4.40 | RG |
| 7.98 | $4.69 | RH |
| 8.98 | $5.75 | CF |
| 11.98 | $6.99 | RL |
| 12.98 | $7.59 | RM |

**MERCHANDISE & AUDIO BOOKS**

| Sugg. List Price | Cost Price | Code |
|---|---|---|
| 4.98 | $2.74 | SC |
| 6.97 | $3.49 | SW |
| 13.98 | $7.69 | WC |
| 14.99 | $6.99 | S2 |
| 17.98 | $8.99 | XB |
| 19.98 | $12.74 | AT |
| 19.99 | $9.99 | S5 |
| 22.98 | $11.49 | XC |
| 24.99 | $12.49 | S4 |
| 29.98 | $14.99 | LA |
| 69.8 | $34.90 | S1 |
| 149.98 | $97.50 | XD |
| 209.4 | $104.70 | S3 |